[No. 35608. Department Two. June 1, 1961.]

ELIZABETH S. FRIEDLANDER, *Appellant,* v JOHN M. FRIEDLANDER, *Respondent and Cross-appellant.**

*Reported in 362 P. (2d) 352.

*Riddell, Williams, Voorhees, Ivie & Bullitt,* for appellant.

*Levinson & Friedman,* for respondent and cross-appellant.

DONWORTH, J.—In this divorce action the trial court granted a divorce to each of the parties. The wife has appealed "from each and every part of" the decree. However, in her brief she states that the matter at issue on this appeal is the status of some of the property—whether separate or community—and the division of this property.[1]

The husband has cross-appealed from that part of the decree in which the trial court ordered him to pay the wife's attorneys the sum of twelve thousand dollars as attorneys' fees (plus costs of suit) in certain monthly in-

---

[1] The trial court found that the parties have two married daughters who are not dependent on the parties for support. Hence, their welfare is not involved in this case.

stallments over a period of eighteen months from the date of the decree.

The trial consumed five days. The statement of facts includes nearly 650 pages of testimony. Appellant (the wife) offered in evidence 127 exhibits consisting principally of photostatic copies of income tax returns, financial statements of the business of Friedlander & Sons, Inc., and other documents relating to the Friedlander enterprises. Respondent (the husband) introduced four exhibits.

After the trial was concluded, the court entered its findings of fact. The two findings (No. 6 and No. 7) to which appellant has assigned error are as follows:

"VI. That at the time of the marriage of the parties [1933] neither party owned or possessed any separate property, and that the defendant was employed by his father, Louis Friedlander, in a jewelry store owned by Louis Friedlander for which defendant received a salary. That on October 1, 1938, defendant's father, Louis Friedlander, gave to the defendant and to the defendant's brother, Paul Friedlander, a gift of $4,000.00 each to be used as a capital investment in said jewelry business and to each of them a 25% share of the income of said jewelry business for bookkeeping purposes, under the form of a partnership agreement. That at said time said jewelry business had assets totaling $225,629.93 and a net worth of $147,899.73. That thereafter on or about the 1st day of June, 1946, said jewelry business was changed from a partnership into corporations, with each partner receiving shares of common stock in various corporations in exchange for their capital accounts in the co-partnership. That thereafter additional corporations and partnerships were formed and the defendant's present holdings in businesses that have resulted from the original partnership and gifts from his parents consist of the following: . . . [List of corporate stocks and partnership interests omitted.]

"VII. That defendant's father, Louis Friedlander, until the date of his death on January 3, 1955, solely managed and was in full control of the partnership and the successor corporations that existed at the time of his death, fixing the salaries and compensation to be paid and drawn by JOHN M. FRIEDLANDER. *That the defendant, JOHN M. FRIEDLANDER, has received from the former co-partnership, the present corporations and partnerships as drawings and sal-*

*ary sums in excess of the amounts he contributed to said businesses by reason of his services. . . . That the marital community of the parties has received full payment for his services to said businesses and that such payments were expended for the benefit of the community.* That defendant's present salary is approximately the sum of $25,000.00 a year in addition to sums to be received as a share of the profits of Merton-Singerman Advertising Agency which share for the year 1959 was in the sum of $1,200.00, and 50% share of the profit in P. & J. Co., which share in the year 1959 totalled $900.00. That his present interests in said businesses consisting of the interests in the corporations and partnerships above set forth is his separate property as the result of the gift from his father, Louis Friedlander, and the rents, issues and profits thereof. That the market value of defendant's separate property consisting of interests in family corporations and partnerships is the sum of $350,000.00 if said businesses were sold as entireties, and that there is no market value on defendant's interests if a separate sale were attempted that bears any reasonable relation to its actual value. That said businesses cannot be sold as an entirety unless his brother, Paul Friedlander, and his mother, Belle Friedlander, consent to the same and that there is no evidence that they will so consent." (Italics ours.)

■ These findings of fact must be accepted as verities unless there is no substantial evidence in the record to support them. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn. (2d) 570, 343 P. (2d) 183 (1959); *Haase v. Helgeson*, 57 Wn. (2d) 863, 360 P. (2d) 339 (1961). Our examination of the record convinces us that there was ample evidence to support findings No. 6 and No. 7.

Appellant's remaining assignments of error relate to the trial court's conclusions of law and judgment and are stated in her brief as follows:

"2. The trial court erred in entering paragraph II of its Conclusions of Law . . . to the effect that 'substantially all of the community earnings of the parties have been expended while the defendant's separate property has appreciated in value, . . .'

"3. The trial court erred in entering paragraphs III and IV of its Conclusions of Law . . . to the effect that the Wife should be awarded property in value substan-

tially less than the sum of her separate property and one-half of the parties' interests in the Friedlander enterprises. "4. The trial court erred in entering judgment . . . awarding Wife property of a value substantially less than the sum of her separate property and one-half of the parties' interests in the Friedlander enterprises."

The trial court divided the property of the parties as follows:

AWARDED TO APPELLANT

| | | |
|---|---|---|
| Her separate property consisting of shares of corporate stock ..........................................Value | | $22,600.00 |
| The family home subject to a mortgage which she shall assume ..................................Net value | | $30,175.50 |
| Household goods and furniture........................... | | $1,500.00 |
| Mink coat and mink stole............................Cost | | $5,534.00 |
| Plus personal effects and jewelry | | |
| Three bank accounts..................................... | | $645.07 |

Alimony of five hundred dollars per month for life (regardless of remarriage or her husband's death) secured by an agreement making this obligation a lien on his separate property or by the deposit with a corporate trustee of high grade securities of the approximate value of sixty thousand dollars.

(Until either of these arrangements is consummated, respondent is enjoined from selling or encumbering his interests in the Friedlander business or his father's testamentary trust without authority of the court or appellant's consent. Furthermore, during this period, respondent is required to keep in force all life-insurance policies awarded to him with appellant named as beneficiary.)

Respondent was ordered to pay certain bank indebtedness and debts owing to the business and to his mother totaling $40,941.18.

AWARDED TO RESPONDENT

| | |
|---|---|
| Personal effects and jewelry........................... | (Not Valued) |
| Golf Club proprietary membership..................... | $1,100.00 |
| All his interest in the Friedlander enterprises............ | $350,000.00 |
| Two bank accounts.................................... | $2,325.00 |
| Undistributed profits in two partnerships............... | $1,730.00 |
| Five policies of life insurance on his life......Cash value | $1,732.36 |
| The fifty per cent remainder interest in the Louis Friedlander testamentary trust........................... | $175,000.00 |

(As above stated, respondent was also ordered to pay appellant's attorneys' fees and certain costs of suit.)

Appellant contends that the decree should be changed to award her an additional sum of $127,600 (her computation of half of the alleged community property) payable upon the happening of any one of three events: (1) The receipt by respondent of his remainderman's interest in the testamentary trust ($175,000) on the death of his mother; (2) respondent's death; or (3) the sale of any substantial portion of the Friedlander enterprises or of respondent's interest therein.

This contention is based on the theory that of the sum of $350,000 (respondent's interest in the Friedlander enterprises), $127,600 was community property. The trial court found that respondent was at all times fully and fairly compensated for the services he rendered to the partnership and, further, that this compensation was entirely expended for the benefit of the community. We have accepted that finding as supported by substantial evidence. Hence we must reject appellant's contention.

██ The cardinal rule which should guide the courts in dividing the property of the parties upon the granting of a divorce has been prescribed by the legislature in RCW 26.08.110 as follows:

" . . . If the court determines that either party, or both, is entitled to a divorce or annulment, judgment shall be entered accordingly, granting the party in whose favor the court decides a decree of full and complete divorce or annulment, and making such disposition of the property of the parties, either community or separate, as shall appear just and equitable, having regard to the respective merits of the parties, to the condition in which they will be left by such divorce or annulment, to the party through whom the property was acquired, and to the burdens imposed upon it for the benefit of the children, and shall make provision for costs, . . ."

Referring to this statutory provision, we said, in *Thompson v. Thompson*, 56 Wn. (2d) 683, 355 P. (2d) 1 (1960):

"Upon appeal, appellant contends that she should have been awarded one half of respondent's separate estate. The

disposition of property in divorce actions is within the wide discretionary powers of the trial court, and this court will not substitute its judgment unless there has been a *manifest abuse of* that *discretion. Edwards v. Edwards*, 47 Wn. (2d) 224, 287 P. (2d) 139."

Unless we are prepared to hold that the trial court erred in finding that respondent's interest in the partnership (and later the corporation) known as Friedlander & Sons, Inc., was his separate property, we cannot conclude that the court manifestly abused its discretion in the division of the property in the manner described above.

If, as appellant strongly contends, this partnership interest constituted community property of the parties, then the division of the property made by the trial court would constitute an abuse of discretion.

■ The character of property (whether community or separate) is to be determined as of the time of its acquisition. *In re Binge's Estate*, 5 Wn. (2d) 446, 105 P. (2d) 689 (1940); *In re Witte's Estate*, 21 Wn. (2d) 112, 150 P. (2d) 595 (1944).

In the present case, in finding No. 6 (quoted above), the trial court found that, on October 1, 1938, respondent's father gave him four thousand dollars to be used as a capital investment in the father's jewelry business and gave him a twenty-five per cent share of the income therefrom for bookkeeping purposes. (Later, respondent was given eleven thousand dollars more for the same purpose.) At that time respondent had for several years been employed by his father as a salesman in the jewelry store at a modest salary.

The new arrangement was embodied in a written partnership agreement whereby the father retained a fifty per cent interest in the profits of the business and *all* of the capital assets. Respondent and his brother each contributed four thousand dollars (given to them by their father) and each was given a twenty-five per cent interest in the profits.

After October 1, 1938, respondent continued performing the same duties for the partnership at the same salary

His salary was increased slightly from time to time but was always approximately the same as other salesmen were paid. In 1946, the business was incorporated and stock was issued in respondent's name but he was not given possession of the certificates.

During the period from 1938 to 1946, respondent's twenty-five per cent of the net earnings was credited to his account on the partnership books but he did not withdraw any part thereof. He actually received only his salary. The only charge against his share of the profits was for the payment of federal income taxes, except that on two occasions his father, without respondent's knowledge, invested a substantial part thereof in government bonds.

While differing on their facts from the present case, our decisions in *In re Buchanan's Estate*, 89 Wash. 172, 154 Pac. 129 (1916), and *Jacobs v. Hoitt*, 119 Wash. 283, 205 Pac. 414 (1922), support the rule that the determinative factor in such cases is whether the income is the result of the individual toil of one of the spouses *or* the inherent qualities of the business in which his separate capital was invested.

This test was also the basis of decision in three Arizona cases: *Rundle v. Winters*, 38 Ariz. 239, 298 Pac. 929 (1931); *Lincoln Fire Ins. Co. of New York v. Barnes*, 53 Ariz. 264, 88 P. (2d) 533 (1939); and *Porter v. Porter*, 67 Ariz. 273, 195 P. (2d) 132 (1948).

The record plainly shows the extent to which the income received by respondent was the result of the individual toil and application of respondent to his work as a jewelry salesman as compared with the amount of his share of the income resulting from the inherent qualities of the jewelry business operated by the partnership. Therefore, the trial court did not err in holding that the twenty-five per cent share in the profits of the partnership which respondent received was his separate property. *State ex rel. Van Moss v. Sailors*, 180 Wash. 269, 39 P. (2d) 397 (1934); *Hamlin v. Merlino*, 44 Wn. (2d) 851, 272 P. (2d) 125 (1954).

Appellant strenuously argues that, because the

parties filed income tax returns on the basis that respondent's twenty-five per cent share of partnership earnings was community income, the character of this income was definitely established as community property. In our opinion, this conclusion does not follow.

These income tax returns were prepared by accountants under the direction of respondent's father. Respondent was not consulted. He signed them at his father's request without examining his returns and without knowledge of their contents. Appellant each year came to the jewelry store and signed her returns under the same circumstances.

There is no evidence that appellant was induced to sign these returns by any promises or coercion on the part of the respondent or his father, or that she, relying on the character of the returns, performed any act or refrained from performing any act to her detriment. Under these circumstances, respondent is not estopped from claiming that his share of the partnership earnings was his separate property. See *Hopkins v. Detrick*, 97 Cal. App. (2d) 50, 217 P. (2d) 78 (1950).

Appellant makes the further argument that separate and community property were commingled, and that for that reason all of respondent's interests in the Friedlander enterprises must be considered as community property. We are unable to follow appellant's contention, in support of this argument, that there was no segregation made on the partnership books between gifts to respondent and the accumulated earnings and profits. The record, as we read it, shows no commingling of the two kinds of property. On the contrary, the partnership accounts show that the original gifts to respondent and his twenty-five per cent of the profits can be clearly traced and identified.

We have considered the several other arguments contained in appellant's briefs in support of her four assignments of error, but (as stated above) the findings of fact are supported by substantial evidence, and we are unable to hold that the trial court's conclusions of law are erroneous in the respects claimed by appellant. Since we find no abuse of the trial court's discretion in dividing the property

of the spouses, the decree must be affirmed on appellant's appeal.

There remains for consideration respondent's cross-appeal, which raises the single issue of whether the amount allowed appellant for attorneys' fees ($12,000) was excessive. Respondent contends that the allowance should not have exceeded six thousand dollars, and argues that appellant's attorneys did considerable work in preparation for trial and in investigation of the business affairs of respondent that was not necessary. This argument appears to us to be largely based on hindsight.

■ Prior to trial, appellant's counsel had the serious responsibility of investigating the history and diverse ramifications of the Friedlander enterprises over a period of twenty-seven years. Their client had no intimate knowledge of these matters. Counsel were under a duty to check the accuracy of the various financial records and other data furnished by respondent and to investigate every rumor or fact which might reasonably have a bearing on their client's legal rights in the premises. We must view the situation in which appellant's counsel found themselves as it existed *prior* to trial and not in the light of facts disclosed at the trial. As the trial court observed, an extraordinary amount of difficult work was done by appellant's counsel.

Neither party produced any expert testimony as to what would be reasonable compensation to be allowed appellant's attorneys for their services in this case. The matter was left to the discretion of the trial judge, who ruled as follows:

"Now, to a more important consideration. I feel that the amount involved in this case is the amount of the separate property as well as the little community [property], and the trust, and that a lot of bookkeeping and extraordinary hard work was done. I feel that each of the attorneys have earned a substantial fee. I think I will allow the plaintiff's attorneys twelve thousand dollars less any amount they have previously received on their attorneys' fee."

We do not think that the trial court abused its discretion in allowing appellant twelve thousand dollars for attorneys' fees in this case.

The judgment is affirmed both upon the appeal and the cross-appeal.

FINLEY, C. J., MALLERY, OTT, and HUNTER, JJ., concur.