[No. 39648. Department One. December 13, 1968.]

RAE MAYO, *Appellant,* v. JACQUE LEE MAYO, *Respondent.**

· *Leonard W. Schroeter* and *Chas. H. W. Talbot,* for appellant.

*Daniel G. Goodwin,* for respondent.

RUMMEL, J.†—This is an appeal from a decree of divorce granted to the appellant-wife. Appellant asserts error in

*Reported in 448 P.2d 926.

†Judge Rummel is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

the division of the community property and claims an inadequate award of attorney's fees.

The parties were married in 1956 in California, and have two minor children who, at the time of trial, were 4½ and 7½ years of age. At the time of the marriage the respondent, a dentist, was on active duty with the navy. After Dr. Mayo's discharge from military service the parties moved to Seattle where Dr. Mayo entered private practice. Prior to their marriage the appellant had received a bachelor's degree in dental hygiene from the University of Washington which qualified her to clean teeth, take X rays and administer fluoride treatments and to assist in other dental procedures. During the marriage Mrs. Mayo worked part time as a dental hygienist. The marriage prospered financially and Dr. Mayo engaged in real estate and stock market speculations and investments. As time went on the respondent became increasingly active in his profession, more interested in financial matters and various hobbies, and spent more and more time away from the family. Such actions, coupled with Mrs. Mayo's discovery of his interest in another woman, culminated in the appellant filing for divorce.

At the trial, which lasted 4½ days, the appellant produced an appraiser, a certified public accountant, and an actuary, who testified as to the income of Dr. Mayo and the value of property and various investment clubs to which he belonged, in an attempt to show that the interests of the community were of greater value than stated by the respondent. This attempt, for the most part, was unsuccessful. The trial court evaluated the community property at approximately $65,000, and awarded the appellant custody of the minor children, $24,400 of the community property, alimony in the amount of $5,000 and $1,500 for attorney's fees. The respondent was awarded approximately $42,500 and was ordered to pay child support in the amount of $175 per month per child to be increased to $200 per month per child in 5 years. The respondent was also ordered to pay $6,000 worth of community debts incurred prior to trial,

and to keep certain insurance premiums paid upon policies naming the wife primary beneficiary.

It is the contention of the appellant that the trial court committed an abuse of discretion in the disposition of the community property in that the court over-evaluated the property awarded to her and under-evaluated the property awarded to the respondent. Further, that although the trial judge stated he would make a fair and equitable distribution of the property, the respondent was actually awarded more than the appellant.

■ This court has consistently stated that it will not interfere with a trial court's disposition of property in a divorce action unless it is persuaded that a manifest abuse of discretion has taken place. *Lucker v. Lucker*, 71 Wn.2d 165, 426 P.2d 981 (1967); *Morris v. Morris*, 69 Wn.2d 506, 419 P.2d 129 (1966); *Mumm v. Mumm*, 63 Wn.2d 349, 387 P.2d 547 (1963); *Friedlander v. Friedlander*, 58 Wn.2d 288, 362 P.2d 352 (1961); *Kolbe v. Kolbe*, 50 Wash. 298, 97 Pac. 236 (1908).

An examination of the record regarding what the parties actually received in the division of the community property, discloses that while the respondent appears to have received a larger portion of the award, the appellant actually received property of a more certain value. The respondent received approximately $42,500. However, the respondent was ordered to pay $5,000 in alimony to the appellant, plus $1,500 in attorney's fees and community debts amounting to $6,000. Approximately $8,500 of the award to the respondent consisted of various stocks, and investments which the respondent had made. The trial judge indicated that it was difficult to place a value on the investment speculations, that the amounts placed on them were arbitrary and it was doubtful that the respondent would ever actually realize their stated worth. In addition, the respondent was awarded $14,000 in accounts receivable from his dental practice, accumulated over the last 3 years. The respondent's yearly income was set by the trial court at $21,000 a year. The appellant, on the other hand, received a

total award of approximately $30,900 which included: the equity in the family home of $6,100, $14,000 in unencumbered property, $4,000 in cash and household furnishings, $5,000 in alimony and $1,500 in attorney's fees. The appellant, a dental hygienist, was working 1 day a week and earning $40 a day.

In light of the type of property awarded to each of the parties, the $5,000 alimony awarded to the appellant and the fact that the appellant is skilled and able to work as a dental hygienist and support herself, we cannot find that the trial court abused its discretion in awarding the property as it did.

Appellant argues that the respondent's one-fourth interest in the MJBP Investment Company, which was valued by the trial court at $100 is actually worth $28,000. Although Dr. Mayo originally had a one-fourth interest in the company, at the time of trial he had no interest in it other than an option to buy back his interest within 18 months. The respondent testified that prior to the trial the investment company was involved in a business transaction in which certain papers had to be signed by Mrs. Mayo. When Mrs. Mayo refused to sign them, title insurance could not be obtained and the respondent had to give up his interest. Although testimony by a broker, Morris Piha, the appellant's cousin, indicated that the future worth of the investment company's holdings would be over $100,000, the trial court, and rightly we think, stated the question concerning the property to be not what it would eventually be worth, but at what Dr. Mayo's present interest could be valued. The appraiser produced by the wife valued the property at an amount equal to its acquisition and construction cost. Although there was testimony that the parties had arranged a 20 year lease at an annual rental of 12 per cent per annum of the cost, the evidence was that the building was 85 per cent complete and the terms of the rental payment had not yet been finally agreed upon.

Dr. Mayo had invested $553.57 in the venture and was one of four partners. He received the amount of his invest-

ment back when he released his interest in the company. To re-enter the partnership, the option to repurchase required he pay an amount equal to the total contribution made at the time of repurchase by any one of the partners. There was no evidence of the value of the property as being in excess of the actual cost. Even if it would appear that the rental would retire the debts, no additional value on this account was attributed by the appraiser to the property.

■ From the record it is apparent that the trial court carefully examined the evidence regarding the MJBP Investment Company and found the interest of the respondent to be highly speculative and the value, if any, negligible. We think that under the circumstances present here, we cannot say that the valuation set by the trial court was inequitable, and we do not find an abuse of discretion in awarding the interest in the company to the respondent. Appellant's other contentions regarding the division of the community property are without merit. This court cannot substitute its conclusions regarding the facts for those of the trial court when the findings are amply sustained by the proofs. Even if we were of the opinion that the trial court should have resolved the factual disputes differently, this court could not supplant the trial court's findings since there was substantial evidence to justify its determination. *Thorndike v. Hesperian Orchards, Inc.* 54 Wn.2d 570, 343 P.2d 183 (1959); *Bennett Veneer Factors, Inc. v. Brewer,* 73 Wn.2d 849, 441 P.2d 128 (1968). The findings of the trial court were strictly within its province.

Appellant next contends that the trial court erred in its award of attorney's fees. The costs of expert witnesses and counsel's fees at the time of trial, according to the appellant's counsel, amounted to $8,699.52. In arriving at this figure he employed an hourly rate which was about twice that of the bar schedules. Appellant argues that since she is unable to pay the costs from her income, the court, by awarding only $1,500 actually lowered her community

property award by $7,199.52. We find this contention also without merit.

 A wife, in a divorce action, is not entitled as a matter of right to attorney's fees. The awarding of suit money and attorney's fees are matters within the sound discretion of the trial court, and its determination will not be reversed on appeal unless untenable or manifestly unreasonable. *Clark v. Clark,* 72 Wn.2d 487, 433 P.2d 687 (1967); *McNair v. McNair,* 64 Wn.2d 283, 391 P.2d 549 (1964); *Vernon v. Vernon,* 58 Wn.2d 499, 364 P.2d 429 (1961); *Phillips v. Phillips,* 52 Wn.2d 879, 329 P.2d 833 (1958).

In *Koon v. Koon,* 50 Wn.2d 577, 581-82, 313 P.2d 369 (1957), this court stated:

> A wife is not entitled to free litigation. If, however, a wife is without funds, it is an abuse of discretion to deny. Conversely, if the wife has money of her own, it is error to award attorney's fees. (Footnotes omitted.)

The trial court discussed the amount of attorney's fees to be awarded at considerable length. Mrs. Mayo's income was $160 a month as compared to the substantial income of the respondent. It is apparent that Mrs. Mayo's present income is insufficient to pay her attorney's fees. However, the trial court indicated that while he was aware of the hours that had been spent by appellant's counsel and by expert witnesses, an attorney, in an effort to prepare a case, will sometimes over do it, and that ". . . I cannot in good conscience allow the attorney fee that was set forth in the affidavits filed by plaintiff's counsel."

There is nothing in the record to indicate that appellant's expert witnesses uncovered substantial inaccuracies in the books of the respondent or in the value of the community property. Additionally, the appellant is not without funds. She will receive $5,000 in alimony, is a trained dental hygienist now earning $40 a day, working one day a week, and is able to support herself and could work on a full-time basis. The awarding of $1,500 to the appellant for attorney's fees by the trial court in no way abused its discretion and such amount was not unreasonable.

■ The trial court carefully considered all phases of the various awards as well as the $5,000 alimony to the wife and the rather substantial amount to be paid to her as support for the children. Appellant refers to the respondent's income as large and infers that he owes her support in proportion to that income. The criterion adopted by this court for the allowance of alimony includes two factors: (1) the necessities of the wife, and (2) the financial ability of the husband. *Morgan v. Morgan,* 59 Wn.2d 639, 643, 369 P.2d 516 (1962). The rule regarding alimony is the same as that relating to child support and the division of property. This court will not substitute its judgment for that of the trial court unless an abuse of discretion seems manifest. *Stacy v. Stacy,* 68 Wn.2d 573, 577, 414 P.2d 791 (1966). We are unable to find that there was a manifest abuse of discretion.

Appellant was also capable of earning a good income—approximately $800 a month if employed full time. One child was in school and the other in pre-school. She will soon be relieved of much of their daytime care.

Affirmed.

HILL, ROSELLINI, HALE, and McGOVERN, JJ., concur.