[Nos. 43196, 43204. En Banc. October 31, 1974.]

THE STATE OF WASHINGTON, *Petitioner*, v. DAVID TERRON SMITH, *Respondent*.

RONALD G. FORSYTH, *Petitioner*, v. THE STATE OF WASHINGTON, *Respondent*.

*Christopher T. Bayley, Prosecuting Attorney,* by *Michael P. Ruark, Senior Deputy,* and *Marco J. Magnano, Jr., Deputy,* and *Wesley G. Hohlbein,* for petitioners.

*Lanning, Mahoney & Bryan,* by *Bill Lanning* and *Robert S. Bryan, Donald C. Brockett, Prosecuting Attorney,* and *Fred J. Caruso, Deputy,* for respondents.

FINLEY, J.—The two cases here on certiorari have been consolidated for consideration and disposition by the Supreme Court because of common issues of law. The first question to be resolved is whether the right to bail and release from custody *after conviction and pending appeal* is limited or subject to specific provisions of the state constitution. A related, second question is double headed: Is the right to bail and release from custody *after conviction and pending appeal* procedural and therefore subject to and governed by court rules or is it substantive and therefore subject to and governed by legislatively enacted limitations, requirements, and standards? The question of the right to bail and release from custody *prior to conviction* is not involved in any manner in either of the two consolidated cases.

█ Our Washington State Constitution, article 1, section 20 provides as follows: *"All persons charged with crime* shall be bailable by sufficient sureties, *except for capital offenses* when the proof is evident, or the presumption great."* (Italics ours.) The crystal clear, literal meaning of the quoted provision of our state constitution makes it applicable *solely to all persons charged with crime.* There is certainly no reference or implication in this particular constitutional provision or elsewhere in the constitution that this provision and limitation is or should be applicable to bail and release of criminal defendants *after conviction and pending appeal.* We have therefore previously held that the *constitution* confers no right to bail pending appeal. *In re Berry,* 198 Wash. 317, 88 P.2d 427 (1939). *See also State v. Haga,* 81 Wn.2d 704, 504 P.2d 787 (1972).

Other jurisdictions have similarly construed their constitutions. *See State v. Helton,* 72 Wyo. 105, 261 P.2d 46 (1953); *Braden v. Lady,* 276 S.W.2d 664 (Ky. Ct. App. 1955); *In re Scaggs,* 47 Cal. 2d 416, 303 P.2d 1009 (1956). By correlative analysis, it is equally clear that the *constitution* places no limitation on the conferral of bail pending appeal. We see no need for resorting to interpretation to change the crystal clear, literal meaning of the above constitutional provision, and we refrain from interposing any judicial engrafting to alter or amend the literal meaning of the constitutional language involved. In short, the constitution is not apposite to these cases.[1]

However, the legislature has provided in RCW 10.73.040 that:

> In all criminal actions, except capital cases in which the proof of guilt is clear or the presumption great, *upon an appeal being taken from a judgment* of *conviction,* the court in which the judgment was rendered, or a judge thereof, must, by an order entered in the journal or filed with the clerk, fix and determine the amount of bail to be required of the appellant; . . .

(Italics ours.) This legislative enactment is clearly inconsistent with the provisions of CrR 3.2(h) as promulgated by the Supreme Court:

> *Release After Verdict.* A defendant (1) who is charged with a capital offense, or (2) who has been found guilty of a felony and is either awaiting sentence or has filed an appeal, shall be released pursuant to this rule, unless the court finds that the defendant may flee the state or pose a

[1] In CrR 1.1, we said:

These rules govern the procedure in the courts of general jurisdiction of the State of Washington in all criminal proceedings and supersede all procedural statutes and rules that may be in conflict and shall be interpreted and supplemented in light of the common law and the decisional law of this State. *These rules shall not be construed to affect or derogate from the constitutional rights of any defendant.*

(Italics ours.) Since we find no rights of the defendants to bail pending appeal, or limitation of those rights provided in the constitution, it is clear that no constitutional rights of the defendants are derogated by CrR 3.2(h).

substantial danger to another or to the community. If such a risk of flight or danger exists, the defendant may be ordered detained.

 This conflict can be resolved by either of two modes of analysis. First, courts have certain limited inherent powers; among these is the power to prescribe rules for procedure and practice. *See R.E.W. Constr. Co. v. District Court*, 88 Idaho 426, 400 P.2d 390 (1965); *Appeal of Dattilo*, 136 Conn. 488, 72 A.2d 50 (1950); *State v. Roy*, 40 N.M. 397, 60 P.2d 646, 110 A.L.R. 1 (1936); *In re Sparrow*, 338 Mo. 203, 90 S.W.2d 401 (1933). Although a clear line of demarcation cannot always be delineated between what is substantive and what is procedural, the following general guidelines provide a useful framework for analysis. Substantive law prescribes norms for societal conduct and punishments for violations thereof. It thus creates, defines, and regulates primary rights. In contrast, practice and procedure pertain to the essentially mechanical operations of the courts by which substantive law, rights, and remedies are effectuated. *See State v. Pavelich*, 153 Wash. 379, 279 P. 1102 (1929); *In re Florida Rules of Criminal Procedure*, 272 So. 2d 65 (Fla. 1972). These guidelines, however, are expressive of the common law and should be applied in consonance therewith whenever possible. Apropos of this, the fixing of bail and the release from custody traditionally has been, and we think is, a function of the judicial branch of government, unless otherwise directed and mandated by unequivocal constitutional provisions to the contrary. The power of the courts at common law is very well paraphrased in 8 Am. Jur. 2d *Bail & Recognizance* § 8 (1963), at pages 787-88.

> Authority to grant bail generally is incidental either to the power to hold a defendant to answer, or to the power to hear and determine the matter in which the defendant is held. At common law courts had inherent power to grant bail to prisoners before them and over whom they had jurisdiction. Granting bail and fixing its amount is generally a judicial or quasi-judicial function; . . .

(Footnotes omitted.) Since the inherent power to fix bail is grounded in the power to hold a defendant, and thus relates to the *manner* of ensuring that the alleged offense will be heard by the court, we believe it to be implicit that the right to bail is essentially procedural in nature. Therefore, we hold that CrR 3.2(h) was validly promulgated by the Supreme Court pursuant to its inherent rule-making authority to prescribe rules of procedure.

■ Since the promulgation of rules of procedure is an inherent attribute of the Supreme Court and an integral part of the judicial process, such rules cannot be abridged or modified by the legislature. *See Bernhardt v. State,* 288 So. 2d 490 (Fla. 1974); *Burton v. Mayer,* 274 Ky. 263, 118 S.W.2d 547 (1938); *Parkison v. Thompson,* 164 Ind. 609, 73 N.E. 109 (1905). Thus, the right to bail (and release) after verdict and pending appeal in the two cases consolidated and considered in this opinion is governed solely by the provisions of CrR 3.2(h).

As a second and alternative rationale, but not the principal or basic one, for our holding today, it is clear that in any event the legislature has delegated to this court the power to prescribe rules for bail pending appeal. This was accomplished in RCW 2.04.190 and RCW 2.04.200.

RCW 2.04.190 enunciates the following:

> The supreme court shall have the power to prescribe, from time to time, the forms of writs and all other process, the mode and manner of framing and filing proceedings and pleadings; of giving notice and serving writs and process of all kinds; of taking and obtaining evidence; of drawing up, entering and enrolling orders and judgments; and generally to regulate and prescribe by rule the forms for and the kind and character of the entire pleading, *practice and procedure* to be used in all suits, actions, appeals and proceedings of whatever nature by the supreme court, superior courts and justices of the peace of the state. In prescribing such rules the supreme court shall have regard to the simplification of the system of pleading, practice and procedure in said courts

to promote the speedy determination of litigation on the merits.

(Italics ours.)

 RCW 2.04.200 provides:

When and as the rules of courts *herein authorized* shall be promulgated all laws in conflict therewith shall be and become of no further force or effect.

(Italics ours.) Since we have concluded in the preceding discussion that the granting or denial of bail is essentially a procedural matter, it follows that the right to prescribe regulatory rules falls within the ambit of RCW 2.04.190. Further, pursuant to RCW 2.04.200, *supra,* and the subsequent adoption of CrR 3.2(h), no *statutory rights* to bail or statutory limitations or provisions concerning the right to bail pending appeal are presently viable and extant. Rather, the right to bail pending appeal or any limitations thereon are solely within the jurisdiction of this court in the exercise of its rulemaking power as now promulgated in CrR 3.2(h). As such, the trial court in the instant cases proceeded within its authority under CrR 3.2(h) in exercising its discretion in granting bail to the defendant Smith pending appeal, and in revoking bail pending appeal of the defendant Forsyth.

It is argued, however, in each of the consolidated cases that the trial court abused its discretion. In State v. Smith, No. 43196, David Terron Smith was charged with murder in the first degree for the premeditated killing of Nicholas Kyreacos on November 20, 1973, in an alley in Seattle, Washington. On the date that he was charged with the crime in question, November 26, 1973, the defendant was incarcerated in the King County jail with no bail. On February 27, 1974, the defendant presented a motion to the court asking that he be released on his personal recognizance or on bail since there existed the likelihood that his mother would not live longer than 2 or 3 days following an operation. The State objected to the release of the defendant, and the court took the defendant's motion under ad-

visement. The following day the court heard testimony and the arguments of counsel and denied the defendant's motion for release. Subsequently, but prior to trial, the defendant made further motions for release on his personal recognizance or on bail which the trial court repeatedly denied.

On March 16, 1974, a jury returned a verdict of guilty of murder in the first degree, with a special verdict that the defendant was armed with a deadly weapon and a firearm at the time of the commission of the offense. The defendant was thereafter returned to the King County jail. On March 19, 1974, the defendant again renewed his motion for release on his personal recognizance or on bail. After hearing testimony and arguments of counsel, the trial court entered an order releasing the defendant from the King County jail on the conditions that an appearance bond in the amount of $50,000 be executed; that the defendant deposit in court $5,000 in cash or other approved security; that the defendant not leave the state of Washington; and that certain other special conditions be satisfied. The court reasoned and concluded that under the definitive guidelines or provisions of CrR 3.2, effective July 1, 1973, the defendant was entitled to be released on bail while he was awaiting sentence or pending an appeal. In so ruling the court stated:

> The new Rules of Criminal Procedure set forth certain criteria that the Court is to follow in attempting to determine whether or not a defendant should be released on bail and, if so, how much. And, among the things is: the length and character of the defendant's residence in the community, employment status and history and financial condition, family ties and relationships, character and mental condition, history of response to legal process, prior criminal record, willingness of responsible members of the community to vouch for the defendant's reliability, the nature of the charge, and other factors indicating the defendant's ties to the community. And it seems to me that on most all of those, except, of course, the nature of

the charge, Mr. Smith would come out as warranting bail.

. . .

Now, I have been impressed with Mr. Smith's demeanor throughout this trial, in circumstances which would certainly be very trying. He has certainly always been very orderly and very respectful, and I can't think of a case where I would find myself more certain that he would abide the Court's orders. Now, there is a possibility that I could be wrong, I know that, but I do think that, pending appeal or pending awaiting sentence, he should be released on bail.

I intend, however, to make the exact same findings that Judge Niemi found in the Haga case. I will find that the defendant would not be likely to flee the State, nor pose a substantial danger to another, or to the community.

Also, I will make a specific finding that proof of guilt is clear, and the presumption of guilt is great, following the defendant's conviction by a jury of the crime of murder in the first degree.

■ The above statement and fact findings of the trial court are clearly within the ambit of the rule justifying the fixing of bail for the defendant. Upon this record, we cannot say as a matter of law that the trial court was in error. The determination of whether the defendant is likely to flee the state or pose a substantial danger to the community is a factual determination involving the exercise of sound discretion of the trial judge. We have repeatedly stated that we will not substitute our judgment for that of the trial judge when there is substantial evidence to support his findings. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959); *Dodd v. Polack,* 63 Wn.2d 828, 389 P.2d 289 (1964); *Sigman v. Stevens-Norton, Inc.,* 70 Wn.2d 915, 425 P.2d 891 (1967); *Mayo v. Mayo,* 75 Wn.2d 36, 448 P.2d 926 (1968); *Noah v. Montford,* 77 Wn.2d 459, 463 P.2d 129 (1969); *Sylvester v. Imhoff,* 81 Wn.2d 637, 503 P.2d 734 (1972); *Stender v. Twin City Foods, Inc.,* 82 Wn.2d 250, 510 P.2d 221 (1973).

In State v. Forsyth, No. 43204, the defendant, Ronald G.

Forsyth, was found guilty by a jury on October 16, 1973, of the crime of carnal knowledge. On December 21, 1973, the defendant was sentenced by the Superior Court for Spokane County. He immediately filed a notice of an appeal and was released pending appeal after posting a $7,500 bond. In early February 1974, the defendant was indicted and arraigned in Portland, Oregon, for the crime of first-degree rape, and was released pending trial only after posting a $50,000 appearance bond. Significantly, the Portland rape charged allegedly occurred on December 15, 1973, approximately 1 week before the sentencing of the defendant on the Spokane carnal knowledge conviction.

After learning of the possibility that the defendant would be indicted in Portland, Oregon, on the rape charge, the State of Washington on February 1, 1974, filed a motion and affidavit to revoke the defendant's appeal bond pursuant to CrR 3.2(h) on the grounds that the defendant was a substantial danger to the community. A hearing upon the State's motion was held on March 20, 1974, before the Superior Court for Spokane County, where that court considered evidence of the defendant's conduct prior to the carnal knowledge conviction and the events relating to the rape charge in Portland. The court then entered a finding of fact pursuant to CrR 3.2(h) that the defendant constituted a "substantial danger to others" and ordered that the defendant's bond pending appeal should be revoked and that he be incarcerated pursuant to the sentence previously imposed on December 21, 1973. In so ruling, the trial judge made the following comments interspersed with pertinent findings:[2]

On October 29, 1970, a young woman named Jean

---

[2] The comments and findings by the trial judge may not be a model of clarity to the critical reader. However, examination of the record before the trial judge fills in some missing details, and supplies answers to some questions possibly raised by the more abbreviated comments of the trial judge. First, the judge takes notice at the hearing in March 1974, of bruises incurred in an incident in 1972. The record before this court discloses that photographs of Beverly Ann Stickelmeyer were taken in connection with the sheriff's report of the incident and were

Windshift was offered a ride and then was taken to the Indian Canyon area near where the instant offense took place, and defendant attempted to persuade her to have sexual intercourse. She apparently refused, and although Mr. Forsyth pursued it, he ended up taking her home. He took her out there without her consent and over her protest. And he admitted as much, although he didn't place any importance on the event. He felt, I guess, this was an activity that was understandable between men and women. Then in January, 1972, the Stickelmeyer incident. I notice Mr. Forsyth does bear a few bruises, but nothing compared to the way Miss Stickelmeyer looks. She got quite a beating. It is hard to understand how a man would do that unless he did have some dangerous propensities.

. . .

I am not ruling how that one happened, but it concerns the court, especially the number of these incidents.

And the incident a month later involving Alice Wood or Mr. McCarthy, whatever the name was, where guns were involved. And there again, there may be two sides to that story, but Mr. Forsyth's part in it was something that concerned the court. He apparently shot one man in the shoulder and did shoot in the car. I didn't realize there was some sort of weapon displayed by people in the car. The reports didn't reveal that, and perhaps that is the case, I don't know.

Then about a year later the incident in question, which

presented to the trial court. They were also attached to the transcript presented to this court. Since the trial court also made reference to defendant Forsyth, presumably it also had available a photograph of him before it at the hearing in March 1974, depicting his condition immediately after the incident; however, this is unclear to us since the sheriff's report makes no mention of photographing Forsyth, and no photographs of Forsyth are included in the record presented to this court.

Second, reference is made to an incident occurring 1 month subsequent to the Stickelmeyer incident and involving Alice Wood or Mr. McCarthy. The statement should have been made in the conjunctive. The sheriff's report discloses that Alice Wood was allegedly struck by a pistol over her left eye by the defendant and McCarthy was allegedly shot in the right shoulder by the defendant.

Finally, the Alice Wood incident is separate and distinct from the alleged Portland rape of Nancy Wood. The similarity of surnames is coincidental.

was a terrible trauma for this young girl, and I am convinced from hearing the case that it did happen. If that were the only matter before me I would say that that, even alone, indicated dangerousness, but I still released him on bail because there was an appeal, and there are appeal questions which are legitimate. I felt, that being the case, and in view of what I felt the law was in relation to defendants during appeal, that he ought to have bond set.

But then on December 15, which I believe was either right before or right after the sentencing, I think a few weeks before—wasn't it, counsel? MR. CARUSO: Yes, your honor. THE COURT: The incident in Portland involving Nancy Wood took place. I realize he has not been convicted there. But the evidence I see here indicates a very strong case against him.

. . .

Right now I think I am compelled from the state of this record to make a finding that Mr. Forsyth is a substantial danger to the community.

This record quite adequately supports the determination of the trial court to revoke the defendant's bail pending his appeal pursuant to CrR 3.2(h), on the basis of the court's finding that the defendant posed a danger to the community in the event of his release.

In conclusion, the trial court in the Smith case and the trial court in the Forsyth case appropriately applied the provisions of CrR 3.2(h). Accordingly, we affirm the trial court in both cases.

HAMILTON, STAFFORD, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.

ROSELLINI, J. (concurring in part; dissenting in part)—Const. art. 1, § 20, provides:

All persons charged with crime shall be bailable by sufficient sureties, except for capital offenses when the proof is evident, or the presumption great.

While taking the view that the granting or denying of bail is a procedural and not a substantive matter, the majority does not go so far as to state that the constitutional

limitation upon the right to bail, pending trial, is not binding on the courts. Such a conclusion would be intolerable, since the power which enacted this provision respecting bail also created this court and gave it its jurisdiction and authority. That power is, of course, the people.

It would appear that we have attempted to abrogate this constitutional provision in CrR 3.2, governing pretrial release, insofar as it provides that capital offenses shall not be bailable. In that rule, we have lodged in the trial courts the discretion to grant or deny bail in all cases. While the question is avoided in the majority opinion, there appears to be an implicit recognition that, in extending this discretion to capital cases, we have exceeded our constitutional authority.

The controlling question in the case before us, as I see it, involves the interpretation of this constitutional provision. Was it the intent of the framers that a person charged with a capital offense, who is presumed innocent, should be denied bail before trial but that after conviction, when he is no longer presumed innocent, he should be allowed bail at the discretion of the court? I think such an intent cannot be reasonably attributed to the framers.

Constitutional provisions should be construed so as to give effect to the manifest purpose for which they were adopted. The language of the constitution is to be taken in its general and ordinary sense; and when the words are used which have both a general and a restricted meaning, the general must prevail over the restricted unless the nature of the subject matter or the context indicates that a restricted sense was intended. *State ex rel. Linn v. Superior Court*, 20 Wn.2d 138, 146 P.2d 543 (1944).

Giving the words used in article 1, section 20, their ordinary meaning, it appears to me that the framers intended to grant the right to bail to persons charged with crimes generally, before conviction, but to withhold that right from persons charged with crimes so serious that the death

penalty was prescribed as a possible penalty, and where the proof of guilt was evident or the presumption great.

In the case of *In re Berry*, 198 Wash. 317, 320, 88 P.2d 427 (1939), this court held that the constitution does not guaranty the right to bail pending appeal from conviction but leaves this matter to the sound discretion of the court, unless otherwise determined by statute, indicating by dictum that discretion is allowed to grant bail in capital cases. The statute under consideration there, Rem. Rev. Stat. § .1747 (P.C. § 7331), prohibited the granting of bail in capital cases (where the above circumstances were present) pending appeal, and this court held that the statute forbade the granting of bail, even where the death penalty was not imposed. Upon the subject which concerns us here, it was said:

> While the major principle declared by the authorities is that the constitution does not guarantee the right to bail pending an appeal from conviction, they also indicate that the matter of bail under such circumstances rests in the discretion of the court unless otherwise determined by statute. We are in accord with that view, and are of the opinion that the constitution neither confers the right to bail nor prohibits its allowance, pending an appeal from conviction.

I think this statement is in accord with the expressed intent of the constitution, insofar as it applies to the *right* to bail in noncapital cases. Insofar as it suggests that the constitution confers upon the courts the right to grant bail in the case of persons convicted of capital offenses, I think it is questionable, for it seems clear to me, reading the words of the constitutional provision and ascribing to them the meaning which an ordinary person would be expected to find there, that the framers contemplated that a person charged with a capital offense, who has been found guilty, should not be granted bail thereafter.

I am of course aware that we cited and quoted the *Berry* case in *State v. Haga*, 81 Wn.2d 704, 504 P.2d 787 (1972), upon the proposition that the limitation on the right to bail

under article 1, section 20, does not apply to cases on appeal. Here again, the statement was admittedly dictum. The issue in that case was whether RCW 10.73.040, limiting a defendant's right to bail pending appeal in capital cases, was affected by abolishment of the death penalty. We held there that the restriction on bail was due to the seriousness of the offense, and not the seriousness of the penalty.

In neither of these cases was the court confronted with the question whether the constitution prohibits the granting of bail in capital cases (or cases where the offense would have been punishable by death prior to the abolishment of that penalty), pending appeal. In each of them, the legislative provision under consideration adopted the constitutional restriction.

I think the legislature correctly interpreted the intent of the framers when it carried this restriction over into the act regulating the granting of bail pending appeal. It recognized that the people did not approve the granting of bail where the offense was so grave that the liberty of the offender posed a threat to human life, and where the guilt of the defendant was clearly establishable or had been established before a jury. I construe the constitutional provision as the legislature evidently construed it. It was the intent of the people to grant the right of bail to persons who have merely been charged with a crime, unless that crime is so serious as to be made a capital offense by the legislature and it is evident that the defendant will be convicted; it was their intent not to grant the right to persons convicted but to leave the question of whether bail should be granted to the discretion of the legislature or the courts, and it was their intent that those persons who were evidently guilty of capital offenses should not have bail, either before or after conviction. It would be absurd to suppose that the framers thought that a person charged with a capital offense would be likely to pose a grave threat to the community if he were set free pending trial; but that if he were released after conviction, but before the

punishment was imposed, no such threat would be present. After conviction, the impetus to commit desperate acts would be even greater.

Assuming that the constitutional provision is not in accordance with some views on the efficacy of criminal sanctions, it is nonetheless the duty of this court to interpret it according to the manifest intent of the framers and to give it effect.

I understand the attitude of the courts that flexibility is needed; however, the fact that such flexibility is desirable does not automatically render it constitutional. The constitution of this state should be modified by the people and not by this court. That constitution manifests a clear intent that persons in the position of the petitioner Smith should not be admitted to bail.

I would affirm in the case of Forsyth v. State, and reverse in the case of State v. Smith.

HALE, C.J., concurs with ROSELLINI, J.

HUNTER, J. (concurring in part; dissenting in part)—I agree with Justice Rosellini, with these further observations.

The majority primarily premises its opinion on *In re Berry*, 198 Wash. 317, 88 P.2d 427 (1939), wherein we recognized that the constitution is silent as to the limitation or right of a defendant to bail after conviction in a capital case on appeal. It concludes therefore that this court has the inherent power to make any provision it sees fit as to a defendant's right to bail after his conviction pending appeal in a capital case. With this I cannot agree.

The mere silence of the constitution as to the right to bail pending appeal does not permit a court to enunciate a rule that is inconsistent with and contradictory to a limitation by the constitution placed on a defendant's right to bail prior to conviction. That the majority has done just this is clearly evident, whereas in this case the conditions were

the same after the defendant's conviction as prior thereto. Const. art. 1, § 20, provides:

All persons charged with crime shall be bailable by sufficient sureties, except for capital offenses, when the proof is evident, or the presumption great.

In the instant case the trial court made a finding that in the case of this defendant (Smith)

proof of guilt is clear and the presumption of guilt is great following the defendant's conviction by a jury of the crime of Murder in the First Degree.

The trial court then granted bail to the defendant under our rule, CrR 3.2, effective July 1, 1973, which provides for bail in a capital case after conviction pending appeal, where it is determined the defendant would not be likely to flee the state, nor poses a substantial danger to another or to the community. In my opinion this rule can be operative only where its application does not result in its being inconsistent with and contradictory to the constitutional limitation on a defendant's right to bail prior to his conviction in a capital case; otherwise, the implicit purpose and intent of Const. art. 1, § 20, is violated.

I would therefore reverse the trial court as to the defendant Smith and affirm as to the defendant Forsyth.

HALE, C.J., concurs with HUNTER, J.