[No. 26567-6-III.   Division Three.   January 6, 2009.]

*In the Matter of the Detention of* C.M., *Petitioner.*

*William D. Edelblute*, for petitioner.

*Robert M. McKenna, Attorney General*, and *Robert A. Antanaitis, Assistant*, for respondent.

¶1 KORSMO, J. — C.M. challenges the 90-day involuntary treatment commitment ordered by the trial court. The trial court found good cause to continue the hearing on the petition beyond the 30 days allotted by RCW 71.05.310. We

granted review of this technically moot case to consider a conflict between the statute and MPR 1.2, which permits a trial court to extend the time for trial when necessary in the interests of justice. We conclude that the rule governs over the statute and affirm the commitment order.

## FACTS

¶2 C.M., who has a significant history of mental illness that includes at least 25 prior hospitalizations, including 10 at Eastern State Hospital, became "symptomatic" at his group home. He discontinued use of his medications and threatened to assault his roommate. He also declined to participate in an evaluation by a designated mental health professional and exhibited paranoid thought processes. He was subject to a 14-day commitment that began August 10, 2007. The State, on August 21, 2007, petitioned to have C.M. committed for 90 days. On August 24, the trial court continued the hearing for one week in order to permit C.M. to consult with "private" counsel.

¶3 The record does not reflect why the matter was not heard August 31.[1] The record next reflects that on September 12 the court continued the scheduled September 17 hearing until October 8 due to the "unavailability of the court." Defense counsel objected to this continuance. On October 5, the State moved to continue the hearing due to a norovirus outbreak on C.M.'s ward at Eastern State Hospital. The outbreak required a quarantine on the ward for at least seven days after last symptoms were observed or negative test results obtained.[2] The expected end date for the quarantine was October 10. The court extended the hearing date to October 29, with a pretrial motion hearing

---

[1] The parties do not argue this time period and we will presume it was properly excluded.

[2] An affidavit in support of the motion described the effects of the illness, indicated that 17 people were currently ill, including 7 on C.M.'s ward, how the disease was transmitted, and explained how the illness could be fatal to those with weakened immune systems. It concluded that those present at trial would be placed at risk if the matter was heard before the quarantine period had concluded.

ordered for October 17. There was no objection to this continuance.

¶4  A jury trial was held October 29, and the jury ruled that C.M. was gravely disabled and should be committed to Eastern State Hospital. The court on November 30 ordered C.M. discharged to a less restrictive treatment for the remainder of the commitment period. C.M. timely sought review. The parties disputed whether or not the order was subject to appeal per RAP 2.2(a)(8). Without deciding the appealability issue, this court granted discretionary review due to the public importance of the issue presented. RAP 2.3(d)(3).

## ANALYSIS

¶5 *Mootness.* The initial issue is whether this appeal should even be heard since C.M. has completed his 90-day commitment and cannot be granted any effective relief. An appeal is moot where the court cannot grant effective relief. *In re Det. of LaBelle*, 107 Wn.2d 196, 200, 728 P.2d 138 (1986). Nonetheless, an appellate court will consider a moot case when it is in the public interest to do so. *Id.* Factors to be considered include whether or not the matter is of a private or public nature, the need for guidance to public officials, and whether the problem is likely to recur. *In re Cross*, 99 Wn.2d 373, 377, 662 P.2d 828 (1983).

¶6  Cases involving mental health procedures, as both *Cross* and *LaBelle* demonstrate, frequently present exceptions to the mootness doctrine. The brief time frames involved in bringing a commitment case to trial, and the comparatively short duration of most commitment orders, mean that few cases will not be moot when considered by an appellate court. Nonetheless, the large number of commitment proceedings indicates that judicial resolution of problems that do arise is important to proper functioning of our mental health system. We believe that resolution of the issue presented is important in the administration of the

civil commitment process. Accordingly, we exercise our discretion to consider this moot case.

¶7 *Timeliness*. The basic problem presented here is that the statute permits extensions of time for lesser periods and fewer reasons than the court rule does. RCW 71.05.310 provides that hearings on 90-day commitment petitions shall be held within five judicial days of the first appearance after the probable cause hearing, and jury trials held within ten days thereof. A court may grant a continuance of five days upon the written request of the patient[3] or his attorney. If there is no commitment order entered within 30 days of filing, exclusive of extensions obtained by the patient, "the detained person shall be released." *Id.*

¶8 In contrast, MPR 1.2 permits a trial court to grant an extension of a mental health proceeding "for a reasonable time" on petition of either party or the court itself. Extensions without the agreement of the respondent patient must be required for "the proper administration of justice" and not be prejudicial to the presentation of the respondent's case. MPR 1.2(b)(2), (c).

¶9 C.M.'s primary complaint is that the trial was not held within 30 days of the filing of the commitment petition on August 21 as required by the statute.[4] The State responds that the trial court properly granted the extensions of time under the court rule and that all the extensions therefore made the trial timely. To the extent that the rule and the statute conflict, the State argues that the court rule governs.

■ ¶10 Conflicts between statutes and court rules are not uncommon and there is a well developed body of law that addresses the problem. Efforts must first be made to harmonize the rule and the statute. *Emwright v. King*

---

[3] The court rule refers to the person who is the subject of the commitment petition as the "respondent," while the statute refers to the subject as the "detained person." We will use the term "patient" in this opinion.

[4] The parties do not identify when the probable cause hearing occurred and treat the date of filing as if it was the date of the first appearance after the hearing.

*County*, 96 Wn.2d 538, 543, 637 P.2d 656 (1981). If the two cannot be harmonized, then the nature of the statute dictates which takes precedence. *In re Marriage of Leslie*, 90 Wn. App. 796, 806, 954 P.2d 330 (1998), *review denied*, 137 Wn.2d 1003 (1999). Courts can adopt only procedural rules; they have no authority to create substantive rights. *State v. Smith*, 84 Wn.2d 498, 501, 527 P.2d 674 (1974); *State v. Templeton*, 148 Wn.2d 193, 212, 59 P.3d 632 (2002). Thus, if a statute creates a substantive right, which is defined as prescribing "norms for societal conduct," then the statute governs over a conflicting court rule. *Smith*, 84 Wn.2d at 501. If, however, the matter is one of procedure, then the court rule will be given effect over the statute. *Id.* at 501-502.

██ ¶11 The two provisions squarely conflict over the length of time a hearing may be continued, with the statute permitting five-day extensions and the rule an unlimited, albeit reasonable, period of time. The two provisions arguably conflict over the issue of who can seek an extension, with the statute addressing only the patient while the court rule permits extensions by the court or either party. Finally, the statute provides a remedy of dismissal for violation, while the court rule does not address that problem. On whole, these appear to be largely procedural matters. The ordering of a court's calendar is typically left to the discretion of the trial court. *State ex rel. Sperry v. Superior Court*, 41 Wn.2d 670, 671, 251 P.2d 164 (1952). We believe, therefore, that it must be considered a procedural matter. The decision to continue a civil or a criminal case from one day to another day likewise is a discretionary matter for the trial court. *State v. Downing*, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004). That, too, must be deemed a procedural matter. Trial on a particular day does not involve a substantive right.

¶12 Accordingly, we believe that the court rule governs extensions of the time for trial of 90-day commitment hearings since they are procedural matters. We also believe that the effect of the MPR 1.2 extensions—exclusion of the

time period from the time for trial—should be the same as those granted under the statute. To rule otherwise would be to recognize a useless act if the court could grant an extension but permit it no actual effect. Accordingly, we hold that MPR 1.2 does govern extensions for trials of 90-day commitment petitions and that properly granted extensions are excluded from the statutory time for trial period.

¶13 The decision to grant or deny a trial continuance is one left to the discretion of the trial court judge. *In re Schuoler*, 106 Wn.2d 500, 512, 723 P.2d 1103 (1986). Discretion is abused if it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). We do not believe the trial court abused its discretion here.

¶14 First, the initial extension to August 31 (and the subsequent rescheduling to September 17) and the October extension due to the norovirus outbreak were not challenged in the trial court and are not challenged here, except for a complaint that the length of the final extension was too long. Both of the extensions were clearly based on tenable grounds—the first was to allow the patient to seek private[5] counsel, and the second was to protect against spreading the virus to jurors and court staff. While C.M. now complains that the final extension was for too long a period, he did not raise such an objection below and the trial court thus did not have the opportunity to explain its rationale. He has waived the right to bring a challenge now. In any respect, it is not hard to imagine that a busy trial court would not be able to fit a jury trial in on short notice without having to disrupt other scheduled matters. There was no abuse of discretion.

¶15 C.M. primarily challenges the September 12 continuance order which moved the trial from September 17 to October 8. This was due to the "unavailability of the court." The record does not explain what is meant by this phrase. Was the judge absent without a replacement, or was there

---

[5] He was represented by appointed counsel throughout the proceedings.

no room on the court schedule? The form motion and order used below does not further explain the circumstances, and we are left without a basis for assessing the reasonableness of the extension.

¶16 Even if we presume the court abused its discretion by continuing the case from September 17, the matter was still held within the time limits of the statute. As stated previously, it is unclear when the probable cause hearing, let alone the next appearance following the hearing, was held. If the time for trial period began on the filing date of August 21, only three days at most[6] ran until the matter was continued at the petitioner's request. Excluding the period from August 24 to September 17, since there is no challenge to that scheduled date, means that at the time the matter was rescheduled to October 8 there were still 27 days left to hear the case. The 21 days between September 17 and October 8 would reduce the remaining time to six days. The period of time from October 8 to the actual trial was properly excluded due to the quarantine situation. Accordingly, at the time trial began, there were still at least six days left to bring the matter to trial under the statute. There was no violation of the statutory time period to try the matter.

¶17 This case would have been timely heard in August but for the patient's request to continue the matter to obtain private counsel. Subsequently, as is often the case on trial calendars, other matters arose which required additional delay. Even though the record does not allow us to determine that all of the subsequent delay was appropriate, the matter was still heard within the statutory mandate.

¶18 The order of commitment is affirmed.

SCHULTHEIS, C.J., and SWEENEY, J., concur.

Review denied at 166 Wn.2d 1012 (2009).

---

[6] Those three days were also part of the original, and unchallenged, 14-day commitment ordered August 10.