# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

In the Matter of the Detention of )
                                    )
W.C.C.                              )
                                    )
                                    )
                                    )

No. 71403-1-I

ORDER WITHDRAWING AND SUBSTITUTING OPINON

On March 25, 2016 the Supreme Court affirmed the opinion filed April 27, 2015 but remanded to this court to modify the opinion to use W.C.C.'s initials in the caption and the body of the opinion. Therefore, the opinion filed April 27, 2015 shall be withdrawn and a substitute published opinion shall be filed. Now, therefore, it is hereby

ORDERED that the opinion filed on April 27, 2015 is withdrawn; and it is further

ORDERED that a substitute opinion shall be filed and published in the Washington Appellate Reports.

DATED this 9th day of May, 2015.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Detention of

W.C.C.

)
)
)
)
)
)
)
)
)

No. 71403-1-I

DIVISION ONE

PUBLISHED OPINION

FILED: May 9, 2016

APPELWICK, J. — W.C.C. alleges that his commitment for 14 day involuntary treatment was untimely and must be dismissed. At issue is whether holidays and weekends are excluded when calculating the maximum period allowed for continuances of hearings under RCW 71.05.240. Continuances of commitment hearings are procedural matters. Therefore, we apply the method of computing time under CR 6(a) rather than conflicting statutory alternatives. W.C.C.'s hearing date fell within the statutory time limit. We affirm.

## STATUTORY SCHEME

The involuntary treatment act (ITA), chapter 71.05 RCW, governs the temporary detention for evaluation and treatment of persons with mental disorders. If a designated mental health professional (DMHP) determines that, as a result of a mental disorder, a person presents a likelihood of serious harm or is gravely disabled, and that the person will not voluntarily seek treatment, the DMHP may file a petition for initial detention. RCW 71.05.150(1). The initial detention shall not exceed 72 hours. RCW 71.05.180. The computation of the 72 hour period excludes weekends and holidays. RCW 71.05.180.

If the DMHP or the evaluation and treatment facility petitions for additional 14 day involuntary treatment, the court shall hold a probable cause hearing within 72 hours of the initial detention. RCW 71.05.240(1). To justify the additional detention, the State

must demonstrate by a preponderance of the evidence that, as a result of a mental disorder, the detained person presents a likelihood of serious harm or is gravely disabled. RCW 71.05.240(3). At the request of the detained person or his or her attorney, the court may postpone the hearing for a period not to exceed 48 hours. RCW 71.05.240(1). The court may also continue the hearing subject to the State's showing of good cause for a period not to exceed 24 hours. RCW 71.05.240(1).

## FACTS

W.C.C. is a 70 year old man who resided at the Downtown Emergency Service Center Rainier House. In December 2013, Rainier House staff informed a King County DMHP that W.C.C. was exhibiting concerning behavior. Another resident, David Abbott, reported that W.C.C. punched him in the neck. Abbott also said that W.C.C. accused him of having a sexual relationship with Karla Manus, a clinical support specialist at Rainier House. Manus reported that W.C.C. was "fixated" on her and had become increasingly jealous and aggressive since she began to show that she was pregnant. According to Manus, W.C.C. screamed at her, called her obscenities, and invaded her space in a way that felt menacing.

On Friday, December 20, the DMHP petitioned for W.C.C.'s initial detention. The trial court granted the petition, and W.C.C. was admitted to Harborview Medical Center for evaluation and treatment.

On Tuesday, December 24, Harborview petitioned for additional 14 day involuntary treatment. At the probable cause hearing that day, W.C.C.'s appointed counsel informed the court that she had a conflict of interest. Counsel asked that she and her firm be allowed to withdraw and have W.C.C.'s case assigned to another attorney. Counsel also

requested that the case be reset for that Friday, December 27. The court granted the motion to withdraw and the continuance.

On December 27, the State also requested a continuance, stating that "conflict counsel needs additional time for appointment due to holiday. [The Associated Counsel for the Accused] will handle the case. Good cause exists." The hearing was reset for the following Monday, December 30.

On December 30, replacement counsel appeared on behalf of W.C.C. Counsel immediately moved to dismiss, arguing that W.C.C. was not provided a hearing within the statutory time line. The court denied the motion. It noted that it granted the continuances to provide W.C.C. prepared, conflict-free counsel and to accommodate nonjudicial days.

The court heard testimony from W.C.C., Abbott, Manus, and Dr. Brent O'Neal, a clinical psychologist who evaluated W.C.C. at Harborview. The court found by a preponderance of the evidence that W.C.C. presented a likelihood of serious harm to others. It granted the petition to detain W.C.C. for 14 days of involuntary treatment.

W.C.C. appeals.

## DISCUSSION

W.C.C. argues that dismissal was required, because he was not provided a probable cause hearing within the statutory time frame. He further contends that there was insufficient evidence that he posed a likelihood of serious harm to others.

3

I.  Continuance of Probable Cause Hearing

W.C.C. asserts that the trial court erred in granting continuances of his probable cause hearing beyond the statutory time limits of the ITA.[1] The decision to grant a motion for a continuance is generally within the discretion of the trial court. In re Det. of G.V., 124 Wn.2d 288, 295, 877 P.2d 680 (1994). The trial court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. Id.

> The ITA provides:

> If a petition is filed for fourteen day involuntary treatment or ninety days of less restrictive alternative treatment, the court shall hold a probable cause hearing within seventy-two hours of the initial detention of such person as determined in RCW 71.05.180. If requested by the detained person or his or her attorney, the hearing may be postponed for a period not to exceed forty-eight hours. The hearing may also be continued subject to the conditions set forth in RCW 71.05.210 or subject to the petitioner's showing of good cause for a period not to exceed twenty-four hours.

RCW 71.05.240(1).

The State maintains that the statutory time frames are not absolute. This is so, the State contends, because "[Mental Proceedings Rule (MPR) 1.2] permits cases to be continued beyond the 'strict' time frames that [W.C.C.] asserts." MPR 1.2 provides that "[i]n any judicial proceeding for involuntary commitment or detention held pursuant to RCW 71.05 the court may continue or postpone such proceeding for a reasonable time, subject to RCW 71.05.210 and RCW 71.05.240, on the following grounds . . . ."

---

[1] W.C.C.'s 14 day commitment has expired. However, civil commitment orders under chapter 71.05 RCW have collateral consequence in subsequent petitions and hearings. In re Det. of M.K., 168 Wn. App. 621, 626, 279 P.3d 897 (2012). This principle allows us to consider a challenge to a civil commitment order after the underlying detention has concluded. See id. The State appears to recognize this, as it does not challenge this appeal as moot.

4

The State asserts that this rule trumps RCW 71.05.240. As support, it cites In re Detention of C.M., 148 Wn. App. 111, 197 P.3d 1233 (2009). The C.M. court considered a conflict between MPR 1.2 and former RCW 71.05.310 (2005), which established a five day limit for continuances of hearings on 90 day commitment petitions. Id. at 116-18. The court found that the conflict involved a procedural matter and thus concluded that MPR 1.2 governed extensions of time for 90 day commitment hearings. Id. at 117-18. The State asserts that this reasoning is "equally applicable to the interplay between MPR 1.2 and RCW 71.05.240(1) here."

However, there is an important difference between C.M. and the present case. Unlike former RCW 71.05.310, the provision at issue here was explicitly named as a restraint on the court rule: "the court may continue or postpone such proceeding for a reasonable time, subject to RCW 71.05.210 and RCW 71.05.240." MPR 1.2 (emphasis added). The court rule explicitly recognizes that its scope is limited by the statute. Therefore, the provisions do not conflict and MPR 1.2 does not negate the statutory time limits.

Accordingly, we must determine whether the continuances at issue here exceeded their respective time limits under RCW 71.05.240(1). The first continuance was granted at defense counsel's request, meaning it was limited to 48 hours. See RCW 71.05.240(1). The 48 hour continuance included 2 days[2] plus 1 holiday. The second continuance was granted at the State's request for good cause, meaning it was limited to 24 hours. See RCW 71.05.240(1). The 24 hour continuance included 1 day plus 2 weekend days.

---

[2] The statute explicitly provides for a period of hours, not days. In re Det. of Swanson, 115 Wn.2d 21, 27-28, 804 P.2d 1 (1990). However, the record is silent as to what time of day the hearings were held or the continuances were granted.

Thus, the crucial question is how to count the 48 and 24 hour periods mandated by the statute—specifically, whether to exclude weekends and holidays. Under RCW 71.05.180, the initial 72 hour detention excludes Saturdays, Sundays, and holidays. RCW 71.05.240(1) does not state the same exclusion for continuances. W.C.C. asks us to interpret this omission as evidence that the legislature intended for weekends and holidays to be categorically included when granting continuances. However, based on the history of this statute, we decline to do so.[3]

Instead, we turn to the general provisions regarding time computation: RCW 1.12.040 and CR 6(a). RCW 1.12.040 states, "The time within which an act is to be done, as herein provided, shall be computed by excluding the first day, and including the last, unless the last day is a holiday, Saturday, or Sunday, and then it is also excluded." CR 6(a) provides, "When the period of time prescribed or allowed is less than 7 days, intermediate Saturdays, Sundays and legal holidays shall be excluded in the computation."

---

[3] It is apparent that the difference between the two provisions was a legislative artifact. Originally, RCW 71.05.180 expressly included weekends and holidays when calculating the initial 72 hour period. LAWS OF 1973, 1st Ex. Sess., ch. 142, § 23. This indicated that RCW 71.05.180 was an exception to RCW 1.12.040, the general time computation statute that provides for exclusion of nonjudicial days. See LAWS OF 1887, ch. 20, § 1. RCW 71.05.240 did not specify whether weekends and holidays should be included when calculating the length of continuances. See LAWS OF 1973, 1st Ex. Sess., ch. 142, § 29. We interpret this to mean that RCW 71.05.240 was—and is—subject to the general time computation statute. See Amalgamated Transit Union Legislative Council v. State, 145 Wn.2d 544, 552, 40 P.3d 656 (2002) ("The legislature is presumed to be aware of its own enactments."). RCW 71.05.180 was later amended to exclude weekends and holidays, signaling that the legislature reversed its position as to the 72 hour determinations. LAWS OF 1979, 1st Ex. Sess., ch. 215, § 11.

Under either provision, the second continuance was properly set.[4] However, the first continuance was proper under only CR 6(a)'s computation method. Defense counsel requested the hearing on Tuesday, December 24, and the hearing was set on Friday, December 27. Forty-eight hours is less than 7 days, so CR 6(a) would dictate that the Christmas holiday was excluded and the hearing was properly set on December 27. But, the holiday did not fall on the last day of the time period, so RCW 1.12.040 would dictate that the hearing should have been set on December 26. The two provisions therefore conflict, and we must determine which applies.

Where a statute and a court rule conflict, the nature of the right at issue determines which provision controls. State v. W.W., 76 Wn. App. 754, 758, 887 P.2d 914 (1995). If the right is substantive, the statute prevails. Id. If the right is procedural, the court rule prevails. Id. This reflects the division of power between the legislative and judicial branches. Id. "Substantive law prescribes norms for societal conduct and punishments for violations thereof. It thus creates, defines, and regulates primary rights. In contrast, practice and procedure pertain to the essentially mechanical operations of the courts by which substantive law, rights, and remedies are effectuated." State v. Smith, 84 Wn.2d 498, 501, 527 P.2d 674 (1974). Where a procedural right is involved, "CR 6(a) expressly supersedes RCW 1.12.040." Stikes Woods Neigh. Ass'n v. City of Lacey, 124 Wn.2d 459, 466, 880 P.2d 25 (1994).

---

[4] The State requested the continuance on a Friday and the hearing was set on the following Monday. The last day of the 24 hour period was on a weekend, so, if applying RCW 1.12.040, it was proper to set the hearing on Monday. And, 24 hours is less than 7 days, so it was proper to exclude the weekend days under CR 6(a).

In C.M., the court found that continuances of 90 day commitment hearings under the ITA are procedural in nature. 148 Wn. App. at 116-17. The court reasoned that the ordering of a court's calendar and the decision to continue a case are discretionary matters for the trial court and thus procedural. Id. at 117. The court further noted that "[t]rial on a particular day does not involve a substantive right." Id.

Continuances of 14 day commitment hearings likewise involve a procedural right. It is the outcome of a probable cause hearing that implicates a detainee's substantive right to liberty. By contrast, setting the timing of a hearing is an "essentially mechanical operation" of the court by which the substantive law is effectuated. Cf. Smith, 84 Wn.2d at 501 (holding that the right to postconviction release pending appeal is procedural). We therefore hold that CR 6(a) controls when granting continuances under chapter 71.05 RCW. Accordingly, the trial court did not abuse its discretion in granting continuances of W.C.C.'s probable cause hearing.

The ITA was enacted, in part, to prevent inappropriate, indefinite commitment of mentally disordered persons; safeguard individual rights; provide continuity of care for persons with serious mental disorders; and protect the public safety. RCW 71.05.010(1), (3), (4), (7). These goals are given effect here. W.C.C.'s case was decided on the merits, and the trial court determined that commitment was the proper step. As a result, W.C.C. was provided treatment, and, in the interim, he was kept separate from the members of the public to whom he posed a potential threat. He was not detained inappropriately—rather, his hearing was continued for the purpose of providing him conflict-free, prepared counsel. Nor was he detained indefinitely but, instead, for a period of time specified in the statute with accommodation for nonjudicial days. Cf. In re Det. of Swanson, 115

8

Wn.2d 21, 29, 804 P.2d 1 (1990) (finding that the ITA's goals are best met by interpreting the initial 72 hour requirement as satisfied when the court calendar begins and the parties' attorneys are ready to proceed, rather than at the time of the individual proceeding). We further note that nothing in the State's conduct suggests anything but good faith.

II.    Sufficiency of Evidence

To commit a person for involuntary treatment under the ITA, the State must show by a preponderance of the evidence that the person presents a likelihood of serious harm to others, or is gravely disabled, as a result of a mental disorder. RCW 71.05.240(3). A "likelihood of serious harm" to others means a "substantial risk that . . . physical harm will be inflicted by a person upon another, as evidenced by behavior which has caused such harm or which places another person or persons in reasonable fear of sustaining such harm." RCW 71.05.020(25)(a)(ii).

W.C.C. argues that there was insufficient evidence that he presented a likelihood of serious harm to others. Where the trial court has weighed the evidence, our review is generally limited to determining whether substantial evidence supports the findings and, if so, whether the findings in turn support the trial court's conclusions of law and judgment. In re Det. of LaBelle, 107 Wn.2d 196, 209, 728 P.2d 138 (1986).

The unchallenged findings[5] demonstrate the following: W.C.C. suffers from vascular dementia and delusional disorder. He has a morbid jealousy related to Manus

---

[5] W.C.C. assigns error to the trial court's finding that "[t]he Respondent, as a result of a mental disorder, presents a likelihood of serious harm . . . to others." This finding appeared in the trial court's order of commitment, entered on December 30, 2013. The trial court entered supplemental findings of fact and conclusions of law on January 23, 2014. W.C.C. does not assign error to any of those findings. Unchallenged findings of fact become verities on appeal. State v. Gibson, 152 Wn. App. 945, 951, 219 P.3d 964 (2009).

9

and experiences delusions about her having a sexual relationship with Abbott. W.C.C. has exhibited aggressive behavior toward Abbott as a result of this delusion. He has also threatened to kill Abbott. W.C.C.'s delusions have grown stronger as Manus's pregnancy has become more obvious. The delusions culminated in an altercation in which W.C.C. accused Abbott of having sex with Manus and punched Abbott in the throat. This behavior is so irrational that it has caused Manus to be afraid for her own safety and the safety of her unborn child. This evidence supports a finding that, as a result of his mental disorder, W.C.C. exhibited behavior that caused physical harm to Abbott and placed Manus in reasonable fear of sustaining such harm.

On appeal, W.C.C. acknowledges that the evidence showed that he recently punched Abbott in the throat and that Abbott and Manus testified that they feared for their safety. However, W.C.C. notes that Abbott disliked W.C.C. and that W.C.C. told Dr. O'Neal that he punched Abbott only in self-defense. W.C.C. further observes that he had no prior history of violence and was 70 years old, was underweight, and had a pacemaker. Therefore, W.C.C. asserts, the evidence demonstrated that he did not pose a likelihood of serious harm. Fairly considered, W.C.C. raises questions not of sufficiency, but of credibility and the weight accorded to the evidence. Those questions are not properly before this court. See State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990) ("Credibility determinations are for the trier of fact and cannot be reviewed on appeal."); State v. Homan, 181 Wn.2d 102, 106, 330 P.3d 182 (2014) ("[W]e must defer to the trier of fact for purposes of resolving conflicting testimony and evaluating the persuasiveness of the evidence.").

Continuances of probable cause hearings under the ITA involve a procedural right. Accordingly, CR 6(a) controls when granting such continuances. Applying the method of time computation in CR 6(a), W.C.C. was provided a probable cause hearing within the statutory time limit of RCW 71.05.240(1). W.C.C. fails to show that there was insufficient evidence that he posed a likelihood of serious harm to others. We affirm.

_Appelwick, J._

WE CONCUR:

_Spearman, J._ _Dwyer, J._