# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Detention of | ) |
| | ) No. 74301-5-I |
| A.M. | ) |
| | ) DIVISION ONE |
| | ) |
| | ) UNPUBLISHED OPINION |
| | ) |
| | ) FILED: November 14, 2016 |
| | ) |

APPELWICK, J. — A.M. seeks reversal of an order remanding her for an additional 90 days of inpatient treatment. She allegies that the State failed to prove by clear, cogent, and convincing evidence that A.M. presented a substantial risk of physical harm to others as a result of a mental disorder as required by RCW 71.05.280(1). We reverse.

## FACTS

A.M. has been diagnosed with paranoid schizophrenia. On August 31, 2015, Designated Mental Health Professional Rodney Pryor filed a petition to place A.M. on an involuntary treatment hold, and A.M. entered into an agreed order committing her to inpatient treatment for a period not to exceed 14 days. The initial petition was based on evidence that A.M. had been found unconscious in a gas station bathroom and when paramedics tried to lift her onto the gurney, she awoke and became combative and

aggressive. She was restrained at St. Francis Hospital where she remained combative, attempted to remove the restraints, attempted to punch, kick, and scratch staff members, and she refused to engage in an evaluation.

A.M. was transferred to Fairfax Hospital, and on September 11, 2015, Fairfax petitioned for an additional 90 day more restrictive involuntary treatment (Petition). The Petition alleged that A.M.:

> has threatened, attempted, or inflicted physical harm upon the person of another or him/herself, or substantial damage upon the property of another after having been taken into custody for evaluation and treatment, and as a result of a mental disorder presented a likelihood of serious harm;

and/or:

> . . . was taken into custody as a result of conduct in which he/she attempted or inflicted physical harm upon the person of another or him/herself, or substantial damage upon the property of others, and continues to present, as a result of mental disorder, a likelihood of serious harm;

and/or:

> . . . was gravely disabled.

On October 13, 2015, the trial court held a hearing on the Petition. The State presented the testimony of Dr. Cynthia Mason, a clinical psychologist from Fairfax Hospital. A.M. refused to be evaluated so Dr. Mason based her evaluation on discussions with A.M.'s treatment team, review of A.M.'s chart, and personal observations of A.M. in the unit and in court. She testified that when she tried to speak with A.M. the day before the hearing, A.M. used pressured, hyperverbal speech, made rambling statements about being a federal marshal and needing to leave the hospital.

She claimed that the hospital staff were terrorists and her life was in danger the longer she stayed there.

At this point, A.M. had been hospitalized at Fairfax for about six weeks, and Dr. Mason read notes from A.M.'s medical chart into the record. At her initial psychiatric evaluation on September 4, 2015, A.M. stated, "I want out of your torture chamber," and "I won't be taking any medication so leave me alone. If you force me, I will probably kill you, so leave me alone." A.M. "physically postured at Fairfax staff" and refused to engage with the nurses, participate in therapeutic discussion or answer any assessment questions.

The daily nursing note from September 20 stated that A.M. was guarded and irritable, angry, agitated, hyperverbal, isolative, pacing, and withdrawn. She denied having any psychological problems and said she had cancer. On September 24, when asked why she was in the hospital, she reported that her gallbladder ruptured and she said she would "have to subpoena the Federal Marshals, the Navy, the CIA, and [the] FBI." On September 25, her case manager noted that A.M.'s thought process was grandiose with delusions, and her behavior was agitated, aggressive, defiant, hyperverbal, oppositional, and isolative. She refused services and wanted to leave the country and go to China because no one was recognizing her for her federal marshal work. A progress note from October 4 indicates that A.M. was restless and fidgety and having auditory and visual hallucinations; she claimed that "60,000 . . . people can see. People with ear chromosomes can't see it."

On October 7, A.M. made threatening statements such as, "You moron, get the fuck out of my room now, otherwise, I will kick your ass." She refused to meet with her

3

case manager, said staff was "violently offensive" for talking to her while she was in bed and told them to "[l]eave me the hell alone. You go deal with a sexual harassment," and said she wanted a taxi called so she could leave. On October 10, she told a nurse she had been admitted to the hospital due to her gallbladder, but she had recovered and would not take medications upon discharge. She told staff to leave her alone, and she would not take any medications when she left because she did not need them.

On October 11, A.M. told a nurse, "I don't like you. Get the fuck out of here" and refused psychiatric assessment saying, "You are a terrorist, Leave me the fuck alone." On October 12, she insisted that she was being kept illegally, that all of the staff were not Americans but "a bunch of African and Middle Eastern terrorists." She stated, "I don't like any of you guys. I am trained to kill and I can see you guys are trying to bring your terrorists all over here. I will kill you people. . . . I will [d]ie for America."

Dr. Mason opined that A.M. presented a substantial risk of physical harm to others as a result of her mental disorder, paranoid schizophrenia. She stated that A.M. presented a likelihood of serious harm to others based on the fact that she was making threats to staff as recently as October 12, the day before the hearing. She expressed concern that A.M. might anger the wrong person, instigate an argument, and have a physical altercation as either the perpetrator or the victim as a result of her behavior. She noted that A.M. had no insight into her need for mental health treatment and should not be released to a less restrictive environment because she was unwilling to take her medications outside of the hospital and was not sufficiently cognitively aware to make or keep appointments.

Dr. Mason acknowledged that A.M. had never been put in restraints while at Fairfax, never forcibly injected with medication, never required seclusion or withdrawal of privileges, never physically assaulted anyone, and had appropriate boundaries. However despite being hospitalized for over a month, having all of her basic needs met, and having staff to redirect her when she started losing control, she remained delusional, disorganized, paranoid, verbally aggressive, and threatening.

A.M. then testified on her own behalf. She said that the statement, "I will kick your ass" was an exaggeration, although she acknowledged being upset. She claimed she was taking medication, working with a doctor, and going to group but was not interested in long-term psychiatric evaluation. She said she would not hurt someone "unless they wish to hurt me first." She claimed to have leukemia, not a psychological condition, and that her prior hospitalization was because something was wrong with her gallbladder.

The trial court found clear, cogent, and convincing evidence that after being taken into custody for evaluation and treatment, A.M. had threatened, attempted, or inflicted physical harm against someone else and as a result of her mental disorder presented a likelihood of serious harm. The court found insufficient evidence that A.M. was gravely disabled or that she was taken into custody because she threatened, attempted or inflicted serious harm and those allegations were dismissed. It determined that a less restrictive alternative was not in the best interests of A.M. and issued an order remanding A.M. to Fairfax inpatient services for a period not to exceed 90 days from the date of judgment, October 14, 2015.

5

In support of its order the court entered supplemental findings of fact and conclusions of law consistent with Dr. Mason's testimony. It also found that A.M. had outbursts during the hearing, which were consistent with the description of her behavior on the ward, including rapid speech, restlessness, and fidgeting.

Citing to In re Detention of LaBelle, 107 Wn.2d 196, 728 P.2d 138 (1986), the trial court recognized that someone who, as a result of their disability, makes statements like "I will kill you" puts herself and the public in a very precarious position. It was particularly concerned with A.M.'s statements with respect to killing staff because she believed they were terrorists. It found that these statements flowed from A.M.'s mental illness and would constitute a likelihood of serious harm to herself or others. The court concluded that the State proved by clear, cogent, and convincing evidence that A.M. had a mental disorder and, as a result of that disorder, presented a substantial risk of harm to others. A.M. appeals.

## ANALYSIS

As a preliminary matter, although the 90 day commitment order has long since expired, the State agrees that this case is not moot because the trial court's order may have adverse consequences on future involuntary treatment determinations. See In re Det. of M.K., 168 Wn. App. 621, 626, 279 P.3d 897 (2012) (recognizing that an order of involuntary commitment may be evidence in a subsequent commitment proceeding, and therefore "[a]n individual's release from [involuntary] detention does not render an appeal moot"). Under the circumstances, we exercise our discretion to decide A.M.'s appeal on the merits.

6

The burden of proof at a 90 day involuntary commitment hearing is "clear, cogent, and convincing evidence." LaBelle, 107 Wn.2d at 209. Accordingly, "the ultimate fact in issue must be shown by evidence to be highly probable." Id. When the trial court has weighed the evidence, this court limits its review to determining whether substantial evidence supports the trial court's findings and, if so, whether the findings in turn support the trial court's conclusions of law and the judgment. Id.; In re Det. of W.C.C., 193 Wn. App. 783, 793, 372 P.3d 179, aff'd, 185 Wn.2d 260, 370 P.3d 1289 (2016). "Substantial evidence is 'evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premise.'" In re Det. of A.S., 91 Wn. App. 146, 162, 955 P.2d 836 (1998 (quoting Holland v. Boeing Co., 90 Wn.2d 384, 390, 583 P.2d 621 (1978))), aff'd, 138 Wn.2d 898, 982 P.2d 1156 (1999). "The party challenging a finding of fact bears the burden of demonstrating the finding is not supported by substantial evidence." Id.

An individual committed for an initial 14 day period of intensive treatment may be committed for an additional 90 days if that person, after being "taken into custody for evaluation and treatment has threatened, attempted, or inflicted (a) Physical harm upon [herself or another], and (b) as a result of a mental disorder presents a likelihood of serious harm." RCW 71.05.280(1); RCW 71.05.320(1). "Likelihood of serious harm" is defined in part to mean: "(a) A substantial risk that . . . (ii) physical harm will be inflicted . . . upon another, as evidenced by behavior which has caused such harm or which places another person or persons in reasonable fear of sustaining such harm." RCW 71.05.020(27)(a). There is no evidence that A.M.'s behavior actually caused physical harm; her continued commitment was based on the trial court's finding that she

presented a likelihood of serious harm based upon behavior "which places another person or persons in reasonable fear of sustaining such harm." Id.

A.M. claims that there was insufficient evidence that she presented a likelihood of serious harm because there is no evidence that her behavior placed anyone "in reasonable fear of sustaining such harm." She argues that "likelihood of serious harm" requires a connection between the threat of harm and the fear actually experienced. But, there is no evidence that any of the hospital staff were fearful when they heard her threats. She contends the trial court improperly transferred the focus to the potential impact of A.M.'s behavior if she were to make such statements in the community. We agree.

A.M. made the threats to hospital staff, but none of them testified or acted in a manner indicating that they were in "reasonable fear of sustaining such harm." RCW 71.05.020(27)(a)(ii). To the contrary, Dr. Mason acknowledged that staff never placed A.M. in restraints, never forcibly injected her with medication, never placed her in seclusion, and never withdrew her privileges. No one testified that A.M.'s threats or behavior actually invoked such fear in anyone threatened. The staff did not testify to such fears, and Dr. Mason did not testify that she feared A.M. would harm her, hospital staff, or any other specific person who had been threatened. Therefore, there was insufficient evidence that A.M. presented a likelihood of serious harm. Cf. In re Det. of W.C.C., 193 Wn. App. at 793-94 (finding sufficient evidence that W.C.C. presented a likelihood of serious harm to others when he exhibited aggressive behavior by punching and threatening a resident and threatening a clinical support specialist, and both

8

testified that W.C.C.'s behavior placed them in reasonable fear of sustaining such harm).

The State acknowledges that likelihood of serious harm requires that "someone" be in reasonable fear of sustaining physical harm. However, the State argues that it need not be the person who was the recipient or target of the threat as long as the person in fear was "privy to the threat" and is "in reasonable fear that the respondent will actually follow through and harm that target." Dr. Mason testified that she feared A.M. could have a "similar or worse incident" if she were released and her fear that A.M. might anger the "wrong person" or harm "others." Dr. Mason failed to identify any specific target. The State urges that this is enough.

The State suggests that a narrow interpretation of the statute would allow a mentally ill person to consistently threaten a target who is unaware of the threat, but that under State v. Williams, 144 Wn.2d 197, 26 P.3d 890 (2001), a mentally ill person may be referred for detention under the involuntary treatment act even if the targeted person is not identified.

Finally, the State claims that construing RCW 71.05.020(27)(a)(ii) to require an identified or specific target could lead to an absurd result, because it would preclude detaining an individual before violence occurs and it would fail to further one of the purposes of involuntary treatment act which is to protect the public safety. RCW 71.05.010(1)(a).

Legislative intent is first determined by looking at the language of the statute. State v. Hansen, 122 Wn.2d 712, 717, 862 P.2d 117 (1993). Because the involuntary treatment act "impacts liberty interests" it must be strictly

9

construed. In re Det. of D.W., 181 Wn.2d 201, 207, 332 P.3d 423 (2014). The language of RCW 71.05.020(27)(a)(ii) requires that A.M.'s behavior "placed another person or persons in reasonable fear of sustaining such harm." This clearly and unambiguously requires the person in fear to be in fear of harm to themselves. When statutory language is unambiguous, "legislative intent is apparent, and we will not construe the statute otherwise." State v. J.P., 149 Wn.2d 444, 450, 69 P.3d 318 (2003). Interpreting RCW 71.05.020(27)(a)(ii) to mean that a person or persons may reasonably fear that some unidentified, hypothetical person will sustain harm would require us to broadly construe the phrase "person in reasonable fear of sustaining harm." This we will not do. R.W., 181 Wn.2d at 207 (involuntary treatment act must be strictly construed).

The State's reliance on Williams, is unavailing because the target in Williams was both identified and aware of the threat. 144 Wn.2d at 202. In Williams, the defendant was convicted of misdemeanor criminal harassment which is defined as threatening "[t]o cause bodily injury in the future to the person threatened or to any other person" and placing the person threatened "in reasonable fear that the threat will be carried out." 144 Wn.2d at 202-03 (quoting former RCW 9A.46.020(1)(a)(i) and (b)). The target was identified as the defendant's former boss, the defendant communicated the threat to the target, and the target testified that he saw a gun protruding from the defendant's pocket and that he was frightened. 144 Wn.2d at 202, 212.

Thus, the "potential impact" of A.M.'s threats and behavior on unspecified persons is insufficient to constitute a likelihood of serious harm.

10

Finally, A.M. claims there was insufficient evidence showing that she committed a recent overt act that demonstrated substantial risk of physical harm. We agree.

The statute is clear, a specific person or persons must be placed in reasonable fear of harm. In the absence of any showing that any specific person or persons were in reasonable fear of sustaining physical harm, there was insufficient evidence to support the trial court's conclusion that A.M. threatened, attempted, or inflicted physical harm upon another and, as a result of a mental disorder, presents a likelihood of serious harm.

We reverse the order committing A.M. for an additional 90 day period.

WE CONCUR: