# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Detention of: | No. 56896-9-II |
| B.L.R., | |
| Appellant. | UNPUBLISHED OPINION |

GLASGOW, C.J.—BLR was arrested in late 2017 after he assaulted his father and threatened to kill him. BLR was found incompetent to stand trial and civilly committed for involuntary treatment. The superior court repeatedly entered new 180-day commitment orders for the next four years.

In early 2022, doctors petitioned for another 180-day commitment for BLR. A commissioner found that as a result of his mental illness, BLR continued to present a substantial likelihood of repeating acts similar to his charged criminal behavior and that BLR was gravely disabled. The commissioner ordered him committed for another 180 days. A judge declined to revise the commissioner's ruling.

BLR appeals, arguing only that substantial evidence does not support the finding that he was gravely disabled. We affirm.

FACTS

BLR has been involuntarily committed intermittently since 2013. In December 2017, BLR was living in the community when he was arrested on charges of second degree assault and felony harassment for trying to strangle his father and threatening to kill him. A trial court found that

BLR was not competent to stand trial and the charges were dismissed. BLR was then civilly committed at Western State Hospital in early 2018. He has since been recommitted every 180 days for multiple years.

## I. CURRENT PETITION FOR INVOLUNTARY TREATMENT

In February 2022, a physician and a psychologist petitioned to commit BLR for an additional 180 days. The petition asserted that BLR was gravely disabled as a result of a behavioral health disorder and that he presented a substantial likelihood of repeating acts similar to the behavior that led to his arrest for a violent felony offense. The petition stated that BLR was not ready for a less restrictive placement in the community.

### A.     Evidence of BLR's Mental Health Condition

The doctors filed a declaration discussing BLR's mental health history. They diagnosed BLR with schizoaffective disorder, antisocial personality disorder, and several substance abuse disorders. The doctors stated that when BLR lived in the community, "he did not regularly engage in treatment for his symptoms, but rather neglected his care and accessed services only when in crisis." Clerk's Papers (CP) at 73.

The doctors explained that BLR's substance abuse disorders were "in remission in a controlled environment," and his mental health symptoms improved during a period in late 2019 and early 2020 when he consistently took his medication and was involved in treatment. CP at 86. He showed improvement to the point of being placed on the discharge list. However, he was removed from the list after he began refusing medication and his symptoms reappeared. Overall, BLR was "generally uncooperative with treatment" over the course of his commitment. CP at 74.

The doctors addressed BLR's behavior during the most recent commitment period. In general, BLR resisted treatment during that period. His symptoms during that time included "vacillations in emotional stability, impaired judgment and insight, [and] disorganized thinking" as well as delusions about owning multiple houses and vehicles. CP at 75-76. BLR was both verbally and physically aggressive towards hospital staff between October 2021 and January 2022. Staff reported that BLR asked to be deported, believed that it was 2023 when it was 2021, and he accused staff of "'racketeering' to say it was 2021." CP at 77. He also requested the removal of a healthy tooth because he believed that it had decayed.

At a hearing, the psychologist, who saw BLR roughly three times a week, testified that she reviewed BLR's records and met with both BLR and his treatment team. She stated that at the time of the hearing, BLR's "judgment and insight" were "severely impacted" by his mental illness, affecting his decisions to seek treatment and care for his health. Verbatim Rep. of Proc. (VRP) (Mar. 1, 2022) at 16.

1.     <u>Likelihood to repeat behavior similar to charged conduct</u>

The doctors assessed BLR's historical, clinical, and risk management factors to determine the likelihood he would repeat acts that were similar to his charged criminal conduct, assault and harassment, due to his mental illness. Historical factors assess past behavior, clinical factors consider the potential for change, and risk management factors "examine those elements of a person's future care that will mitigate or exacerbate their risk in the community." CP at 84.

The declaration the doctors submitted with the petition asserted that BLR "required high levels of staff support and intervention when demonstrating poor volitional control" during the most recent commitment period. CP at 81. At times, he "required physical restraint and seclusion."

3

*Id.* The psychologist believed that BLR's volitional control was "likely to de-stabilize very quickly" if he were released, due to his refusal to take medication without a court order. VRP (Mar. 1, 2022) at 17. During the most recent commitment period, BLR was reported to have physically grabbed staff or tried to bite them in at least two incidents, broke a payphone in another, and spat on staff at least twice.

Overall, the doctors concluded that BLR was "likely at an overall moderate to high risk level of violent recidivism at this time." CP at 84. Because of BLR's difficulties with volitional control when he did not take his medication and his refusal to take medication without a court order, the psychologist testified that BLR's risk of repeating acts similar to his charged offense would increase if he were released.

### 2. Grave disability

In addition, the psychologist did not believe that BLR could take care of his own "basic needs of health and safety" or support himself financially if released. VRP (Mar. 1, 2022) at 16. She testified that she observed BLR being disruptive in the hospital and physically aggressive towards others. Similarly, the doctors' declaration asserted that BLR's mental illness affected his judgment, pointing to his recent requests for deportation and to remove the healthy tooth. His delusions included believing that he was wealthy and telling "staff on multiple occasions that he 'won a [least restrictive alternative confinement order] in court already.'" CP at 80. And BLR repeatedly stated that he would take medication only when under court order to do so. Further, BLR reported that he did not believe that he would require supportive services if released.

BLR also testified at the hearing. He stated that he would not take medication because of the hand tremors his medication caused, and he told the commissioner, "I don't believe I need medication" and "I don't need mental health treatment." VRP (Mar. 1, 2022) at 25.

B.      Court Ruling and Later Proceedings

In March 2022, the commissioner granted the petition to commit BLR for an additional 180 days. The commissioner found that as a result of his mental illness, BLR continued to "present a substantial likelihood of repeating acts similar to [his] charged criminal behavior." CP at 4.

The commissioner also found that the State presented clear, cogent, and convincing evidence that BLR was gravely disabled based on the testimony that he was "not capable of meeting his own health and safety needs independently," testimony that BLR was "impaired volitionally," and because he "continue[d] to exhibit that he [was] impaired cognitively." VRP (Mar. 1, 2022) at 29. Based on BLR's presentation in court and his statements that he would not take medication or seek treatment if released, the commissioner found that a less restrictive alternative was not in BLR's best interests.

BLR moved to revise the commitment order. He contended that the State failed to establish a prima facie case that he was likely to commit acts similar to those that led to his arrest. He also argued that the State failed to show "any evidence that [BLR was] in danger of serious physical harm as a result of his failure to provide for his essential human needs of health and safety, nor did the court make such a finding." CP at 24. And he reasoned that the State had not met its burden of demonstrating BLR's loss of volitional control. The State responded that BLR's consistent refusal to take medication or cooperate with treatment demonstrated a lack of insight and, because of his

5

ongoing delusions, he could not care for his basic needs if released from the hospital without support.

The judge denied the motion to revise the commitment order. The trial court found that BLR presented a substantial likelihood of committing similar acts to his charged conduct and met both definitions of grave disability. The trial court noted that people can disagree with their doctors without being found gravely disabled. However, BLR's historical and ongoing symptoms of delusions and aggression in response to internal stimuli, which were ongoing, coupled with his lack of insight into his mental health problems, "indicated a significant deterioration in his routine functioning because of his loss of cognitive and volitional control." VRP (Apr. 1, 2022) at 17. BLR appeals.

## ANALYSIS

BLR argues that the superior court erred by declining to revise the commitment order because substantial evidence did not support the finding that he was gravely disabled. He contends that the State did not offer any evidence that he had recently failed to accommodate his essential needs. He also insists that the State failed to establish that he had recently deteriorated in his cognitive and volitional control. BLR does not assign error to or argue about the trial court's conclusion that he presented a substantial likelihood of committing similar acts to his charged crimes, which was an independent basis for the commitment order.

### I. STANDARD OF REVIEW

After a motion to revise a commissioner's order, we "review the superior court's ruling, not the commissioner's decision." *In re Det. of L.K.*, 14 Wn. App. 2d 542, 550, 471 P.3d 975 (2020). When a superior court judge denies a motion to revise; however, the commissioner's order

6

and findings "'become the orders and findings of the superior court.'" *Id*. (quoting *Maldonado v. Maldonado*, 197 Wn. App. 779, 789, 391 P.3d 546 (2017)). "Unchallenged findings of fact become verities on appeal." *In re Det. of W.C.C.*, 193 Wn. App. 783, 793 n.5, 372 P.3d 179 (2016).

## II. INDEPENDENT BASIS FOR THE 180-DAY COMMITMENT

A court may involuntarily commit a person for 180 days of involuntary treatment on several grounds, such as if the person has had criminal charges dismissed because they were incompetent to stand trial, they have committed acts constituting a felony, and as a result of a behavioral health disorder, they are substantially likely to repeat similar acts. RCW 71.05.280(3).[1] A person can also be involuntarily committed for 180 days if they are gravely disabled. RCW 71.05.280(4). These are independent bases for involuntary commitment.

The State emphasizes that BLR has not challenged the finding that he presented a substantial likelihood of repeating acts similar to the behavior that led to his criminal charges, which was an independent basis for civil commitment. The State is correct that this is an independent ground to civilly commit a person for 180 days. RCW 71.05.280(3). The trial court in this case found that BLR had performed acts constituting a violent offense and that he presented a substantial likelihood of repeating similar acts if released. BLR does not challenge this finding on appeal, instead arguing only that the trial court erred in finding BLR was gravely disabled.

The doctors concluded that BLR had a moderate to high risk of violent recidivism because of his struggles with volitional control when not medicated and his refusal to take medication without a court order. The commissioner and the judge on revision both agreed, and BLR does not

---

[1] The relevant language has not changed since the commitment hearing, so we cite to the current version of the statute.

assign error to this finding or otherwise argue it was incorrect. *See W.C.C.*, 193 Wn. App. at 793 n.5. The finding that BLR had a substantial likelihood of again committing a violent felony if released is unchallenged on appeal. Thus, even if the trial court's finding of grave disability were in error, an issue we do not reach, we must affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, C.J.

We concur:

Veljacic, J.

Che, J.