# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In the Matter of the Detention of:<br><br>C.A.A.,<br><br><div align="center">Appellant.</div> | No.  58800-5-II<br><br><br><div align="center">UNPUBLISHED OPINION</div> |

PRICE, J. — As a result of threats against an employee of a grocery store, C.A. was charged with the crime of felony harassment.  However, C.A., who suffered from mental illness, was deemed to be incompetent to stand trial and unlikely to be restored.  Pursuant to the process for felony-based commitment under the "Involuntary Treatment Act" (ITA), chapter 71.05 RCW, the superior court dismissed the charges and permitted C.A. to be held in the county jail for up to 14 days prior to transport to Western State Hospital (WSH).  Soon thereafter, the superior court ordered C.A. to be committed for 180 days of involuntary treatment.  The superior court found that commitment was justified under the ITA's felony-based commitment procedure, but it also found, separately, that C.A. was gravely disabled.

C.A. appeals the superior court's order, arguing that (1) the State failed to prove C.A. committed a felony as required by felony-based commitment under the ITA, (2) the ITA violates the First Amendment because it does not require the State to prove an individual's mental state for felony-based commitment when the underlying crime involves speech, and (3) the superior court did not have any authority to order C.A. to be held in the county jail for up to 14 days after dismissing the criminal charge against him.

We affirm.

FACTS

In October 2022, C.A. was lying on the ground in front of the entrance to a grocery store, obstructing people who were heading out to the parking lot. A security guard for the grocery store asked C.A. to move, but C.A. ignored him. Unsure what C.A. would do next, the security guard took out pepper spray from his pocket. Seeing the pepper spray, C.A. accused the security guard of pointing a weapon at him and said several times, "You . . . just wait, I'm going to show you." Verbatim Rep. of Proc. at 32.

C.A. then stood up, took out what appeared to be a gun, and pointed it at the security guard. Fearing he was about to be killed, the security guard drew his own gun while continuing to hold the pepper spray. Soon thereafter, the security guard pepper sprayed C.A., causing C.A. to retreat. Law enforcement later found C.A. and placed him under arrest.

Based on the threats made to the security guard, the State charged C.A. with felony harassment. C.A. later underwent a competency evaluation to determine whether he was competent to stand trial. The resulting report stated that more likely than not, C.A. lacked the capacity to assist in his own defense and that the chances of restoration would improve if C.A. could receive involuntary mental health treatment. As noted in the report, C.A. had had a history of involuntary mental health treatment (including 15 or 16 prior admissions to WSH over a nearly twenty-year period), a lack of insight into his mental illness, and an unwillingness to accept medication.

After a delay of several months without C.A. being admitted to competency restoration, the superior court entered an "Order Dismissing Felony Charges and Directing Civil Commitment Evaluation" pursuant to the felony-based involuntary commitment process in the ITA. As part of

its order, the superior court found that C.A. was incompetent to stand trial pursuant to RCW 10.77.010 and 10.77.050 and that it was unlikely that C.A.'s competency would be restored. The superior court dismissed the charges against C.A. The superior court ordered C.A. committed to WSH for up to 120 hours for the purposes of being evaluated for a civil commitment petition. The superior court also ordered:

> The defendant shall be held in the jail/detention facility for a maximum of 14 days pending admission to the state hospital for civil commitment evaluation. *The defendant shall be released if the state hospital has not offered admission within 14 days.* The defendant shall be transported to the state hospital by the jail/detention facility.

Clerk's Papers at 37 (emphasis added).

Two weeks later, C.A. was admitted to WSH. Following C.A.'s admission, two WSH mental health providers filed a petition for a 180-day civil commitment (WSH's petition). WSH's petition alleged that (1) C.A. committed acts constituting felony harassment and C.A. presented a substantial likelihood of repeating similar acts as a result of a behavioral health disorder; and (2) C.A. was gravely disabled as a result of a behavioral health disorder.

The superior court held a hearing on WSH's petition. WSH psychologist, Dr. Archer, testified on behalf of the petition. According to Dr. Archer, C.A. experiences schizoaffective disorder, bipolar type, as well as substance use disorder. Dr. Archer further explained that C.A.'s disorders result in a lack of cognitive and volitional control. She also described occasions when C.A. was placed in seclusion due to unsafe interactions causing danger to others and himself.

Testifying about the alleged grounds for commitment, Dr. Archer said that as a result of his behavioral health disorder and escalating loss of volitional control, C.A. presented a substantial likelihood of repeating acts similar to the charged criminal behavior. She also testified that C.A.

3

was gravely disabled because he was unable to meet his basic health and safety needs due to his behavioral health disorder, which would place him at risk of serious physical harm.

Following the hearing, the superior court entered written findings of fact and conclusions of law. The superior court found, in part, that the testimony established that C.A. committed acts constituting the crime of felony harassment and that C.A. presented a substantial likelihood of repeating acts similar to the charged criminal behavior. As a separate basis for commitment, the superior court also found that C.A. was gravely disabled as a result of a behavioral health disorder. Thus, the superior court ordered C.A. to receive up to 180 days of intensive inpatient treatment.

C.A. appeals.

ANALYSIS

C.A. challenges his commitment with three arguments. Two of C.A.'s arguments relate to the superior court's 180-day commitment order, while the third relates to the superior court's order authorizing C.A. to be held in the county jail pending his transport to WSH. First, C.A. contends his commitment was unlawful because the State failed to prove the mens rea element of the underlying crime of felony harassment. Second, C.A argues that if the ITA, through former RCW 71.05.280(3) (2022), does not require the State to prove the mens rea of felony harassment, then the ITA violates the First Amendment. And third, C.A. argues that the superior court did not have the authority to order that he be held for up to 14 days pending his transport to WSH.

I.  C.A.'S 180-DAY COMMITMENT ORDER IS LAWFUL

C.A.'s first two arguments pertain to the portion of the superior court's order that relates to the ITA's felony-based commitment provision—whether the State is required to prove the person committed all elements of felony harassment, including the mens rea element, and whether

4

the provision violates the First Amendment because it does not require the State to prove an individual's mental state for felony-based commitment when the underlying crime involves speech.

The State responds, in part, that the superior court may be affirmed because C.A. did not assign error to the superior court's second basis for commitment unrelated to his felony-based commitment—the finding that C.A. was gravely disabled under former RCW 71.05.280(4).[1] We agree with the State.

Unchallenged findings of fact are verities on appeal. *In re Det. of W.C.C.*, 193 Wn. App. 783, 793 n.5, 372 P.3d 179 (2016). The superior court authorized C.A.'s commitment for involuntary treatment on two separate bases—the felony-based commitment and, separately, a finding that C.A. was gravely disabled.

C.A. only challenges the felony-based commitment portion of the superior court's order. C.A. does not assign error to, or challenge, the superior court's separate finding that C.A. was gravely disabled, making it a verity. *Id.* Thus, an independent basis for the superior court's 180-day commitment order exists irrespective of the portion of the superior court's order relating to felony-based commitment.[2] *See In re Det. of W.R.G.,* 110 Wn. App. 318, 327, 40 P.3d 1177 (2002) ("gravely disabled" finding provided an independent basis for commitment despite jury instruction errors). Accordingly, we affirm the superior court's 180-day commitment order.

---

[1] C.A. does not respond to this aspect of the State's argument.

[2] C.A. provides no argument that there are different consequences resulting from these two independent bases for ITA commitment.

II. THE SUPERIOR COURT'S AUTHORITY TO HOLD C.A. AFTER DISMISSING THE CRIMINAL CHARGE

C.A.'s final argument is that the superior court did not have the authority to hold him for up to 14 days after dismissing the criminal charge. We disagree.

We review questions of statutory interpretation de novo. *Jametsky v. Olsen*, 179 Wn.2d 756, 761, 317 P.3d 1003 (2014). The primary goal of statutory interpretation is to determine and give effect to the legislature's intent. *Id.* at 762. To determine legislative intent, we first look to the statute's plain language. *Id.* "If the statute's meaning is plain on its face, we give effect to that plain meaning as the expression of what was intended." *TracFone Wireless, Inc. v. Dep't of Revenue*, 170 Wn.2d 273, 281, 242 P.3d 810 (2010). Only when a statute is ambiguous do we turn to statutory construction, legislative history, and relevant case law to determine legislative intent. *Jametsky*, 179 Wn.2d at 762. And we construe statutes to avoid absurd results. *Jespersen v. Clark County*, 199 Wn. App. 568, 578, 399 P.3d 1209 (2017).

As relevant here, former RCW 10.77.086(5) (2022) provides that when a defendant is unable to be restored to competency, the superior court shall dismiss the charges and order the defendant committed to the state hospital for up 120 hours to be evaluated for the purposes of filing a civil commitment proceeding. And former RCW 10.77.068 (2022) provides the time periods mandated by the legislature for the performance of services related to competency evaluation and restoration. Former RCW 10.77.068 provides, in relevant part:

> [(1)](b) The legislature establishes a performance target of 14 days or fewer for the following services related to competency to stand trial, when access to the services is legally authorized:
>
> . . . .
>
> (ii) To extend an offer of admission to a defendant ordered to be committed to a state hospital following dismissal of charges based on incompetency to stand trial under RCW 10.77.086.

. . . .

> [(2)](b) A maximum time limit of 14 days as measured from the department's receipt of the court order . . . is established to complete the services specified in subsection (1)(b) of this section.

Here, the superior court properly exercised its authority consistent with the plain language of the relevant statutes. The plain language of former RCW 10.77.086(5) requires that, when competency has not been restored, the superior court dismiss the charges against the defendant[3] and order that the defendant be committed for evaluation for civil commitment. Former RCW 10.77.086(5). The superior court's order complied with these statutory requirements. Nothing in the statute requires that the defendant be released from confinement immediately upon dismissal of the charges.

And former RCW 10.77.068 clearly contemplates that the state hospital will have 14 days to offer admission to a defendant committed under former RCW 10.77.086(5). Here, the language included in the superior court's order, read as a whole, is clearly designed to enforce the prescribed legislative time periods for WSH to comply with the superior court's order committing C.A. for evaluation by ordering that C.A. be released if he is not transferred to WSH within the allowed 14 days. The superior court did not exceed its authority, but rather explicitly enforced the legislative directive to WSH in former RCW 10.77.068.

---

[3] We note that there are circumstances, not applicable here, where the superior court may not dismiss the charges and must order an extended competency restoration period. *See* former RCW 10.77.086(5) ("However the court shall not dismiss the charges if the court or jury finds that: (a) the defendant (i) is a substantial danger to other persons; or (ii) presents a substantial likelihood of committing criminal acts jeopardizing public safety or security; and (b) there is a substantial probability that the defendant will regain competency within a reasonable period of time.").

7

Finally, interpreting former RCW 10.77.068 and former RCW 10.77.086 to require the superior court to release a confined criminal defendant immediately upon dismissal of charges after ordering commitment for evaluation for civil commitment leads to an absurd result. Since 2013, the legislature has identified the need to balance protecting public safety from violent behavior committed by individuals suffering from behavioral health disorders and reducing unnecessary confinement from those suffering from behavioral health disorders. *See* LAWS OF 2013, ch. 289, § 1; LAWS OF 2015 1st sp. s., ch. 7, § 1. Reading the relevant statutes to require superior courts to immediately release a criminal defendant from confinement after ordering commitment under former RCW 10.77.068 is an absurd interpretation of the statutes, based on language that does not exist, contrary to the legislative intent to protect the public from violent behavior. In contrast, reading the statutes to allow the state hospitals the prescribed 14 days to offer admission to a criminal defendant who is already subject to confinement and is ordered to be committed for evaluation is a reasonable interpretation of the plain language of the statute consistent with the legislative intent.

The superior court's order complied with all the relevant statutory requirements regarding commitment of an individual charged with a felony who cannot be restored to competency. The superior court dismissed the charges and ordered the defendant committed as required by former RCW 10.77.086(5). And the superior court allowed WSH 14 days to comply with the commitment order as prescribed by former RCW 10.77.068. Accordingly, C.A.'s argument fails.

CONCLUSION

We affirm.

8

No. 58800-5-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

CRUSER, C.J.

MAXA, J.